## BARTON *v.* BARBOUR.

1. The rule that a receiver cannot be sued without leave of the court of equity which appointed him applies to suits against him on a money demand, or for damages, as well as to those the object of which is to recover property which he holds by order of that court.

2. The fact that, by such order, he is in possession of a railroad, and engaged in the business of a common carrier thereon, does not so take his case out of the rule, as that an action will lie against him for an injury caused by. his negligence or that of his servants in conducting that business.

3. If the adjustment of a demand against him involves disputed facts, that court may, in a proper case, either of its own motion or on the prayer of the parties injured, allow him to be sued in a court of law, or direct the trial of a feigned issue to settle the facts.

4. The determination by a court of equity, according to its own course and practice, of issues of fact growing out of the administration of trust property in its possession, does not impair the constitutional right of trial by jury.

5. In view of the public and private interests involved, a court of equity, having in its possession for administration as trust assets a railroad or other property, may authorize the receiver to keep it in repair, and manage and use it in the ordinary way, until it can be sold to the best advantage of all interested therein. Without leave of that court, a court of another State has, under such circumstances, no jurisdiction to entertain suits against him for causes of action arising in the State wherein he was appointed and the property is situated, which are based on his negligence or that of his servants in the performance of their duty in respect to the property.

ERROR to the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. Saul S. Henkle* for the plaintiff in error.
*Mr. Linden Kent,* contra.

MR. JUSTICE WOODS delivered the opinion of the court.

This was a suit brought by Frances H. Barton, the plaintiff in error, against John S. Barbour, the defendant in error, as receiver of the Washington City, Virginia Midland, and Great Southern Railroad Company.

The declaration was as follows: " The plaintiff, Frances H. Barton, sues the defendant, John S. Barbour, as receiver of the Washington City, Virginia Midland, and Great Southern Railroad Company, a corporation organized under a law of the State of Virginia, and doing business and having an office

in the District of Columbia, for that the defendant, on the eleventh day of January, 1877, was running and operating a railroad through the State of Virginia, and upon said railroad the defendant was a common carrier of freight and passengers for hire.    That, on the day and year aforesaid, the plaintiff was a passenger in a sleeping-car upon said railroad, and by reason of a defective and insufficient rail upon the track of said railroad the car in which the plaintiff was a passenger was thrown from the track and turned over down an embankment, and she was greatly hurt and injured, and her bodily health permanently injured ; that the defendant did not use due care in relation to said defective rail, and the injury to the plaintiff was occasioned by the negligence and carelessness of the defendant, but the plaintiff used due care.    The plaintiff claims $5,000 damages."

To this declaration the defendant below filed a plea to the jurisdiction, in which he alleged that at the time of service of process on him he was the receiver of all the property, rights, and franchises of said railroad company, by virtue of a decree made by the Circuit Court for the city of Alexandria, in the State of Virginia, on July 13, 1876, in a cause depending on the equity side of said court, wherein John C. Graham, who sued for himself and others, was complainant, and said railroad company and others were defendants ; that said decree authorized him to defend all actions brought against him as such receiver, by the leave of said court, and declared that he should not in any case incur any personal or individual liability in conducting the business of said railroad, by reason of any act done by him or his servants, he acting in good faith and in the exercise of his best discretion, but that the property in his hands as such receiver should nevertheless be chargeable with any claim which might be established in any action brought against him as such receiver under leave of the court first had and obtained.

The plea then averred that the plaintiff had not obtained leave of said court to bring and maintain said suit.    Wherefore the defendant prayed judgment whether the court could or would take further cognizance of said action.

The plaintiff filed the general demurrer to the plea.

The court below gave judgment overruling the demurrer, and against the plaintiff for costs. She prosecutes this writ of error to reverse that judgment.

The question presented by the record is the sufficiency of the plea to the jurisdiction of the court.

The defendant insists that the Supreme Court of the District of Columbia had no jurisdiction to entertain the suit without leave of the court by which he was appointed receiver.

It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained. *Davis* v. *Gray*, 16 Wall. 203, and the cases there cited. But the learned counsel for the plaintiff in error strenuously contends that the only consequence resulting from prosecuting the suit without such leave is that the plaintiff may be restrained by injunction or attached for contempt, and that the rule applies only to cases where the suit is brought to take from the receiver property whereof he is in possession by order of the court. We conceive that the rule is not so limited.

The evident purpose of a suitor who brings his action against a receiver without leave is to obtain some advantage over the other claimants upon the assets in the receiver's hands. His judgment, if he recovered one, would be against the defendant in his capacity as receiver, and the execution would run against the property in his hands as such. *Hall* v. *Smith*, 2 Bing. 156; *Camp* v. *Barney*, 4 Hun (N. Y.), 373; *Commonwealth* v. *Runk*, 26 Pa. St. 235; *Thompson* v. *Scott*, 4 Dill. 508.

If he has the right, in a distinct suit, to prosecute his demand to judgment without leave of the court appointing the receiver, he would have the right to enforce satisfaction of it. By virtue of his judgment he could, unless restrained by injunction, seize upon the property of the trust or attach its credits. If his judgment were recovered outside the territorial jurisdiction of the court by which the receiver was appointed, he could do this, and the court which appointed the receiver and was administering the trust assets would be impotent to restrain him. The effect upon the property of the trust, of any attempt to enforce satisfaction of his judgment, would be precisely the same as if his suit had been brought for the purpose of taking prop-

erty from the possession of the receiver. A suit therefore, brought without leave to recover judgment against a receiver for a money demand, is virtually a suit the purpose of which is, and effect of which may be, to take the property of the trust from his hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property. We think, therefore, that it is immaterial whether the suit is brought against him to recover specific property or to obtain judgment for a money demand. In either case leave should be first obtained.

And it has been so held in effect by this court. In *Wiswall v. Sampson* (14 How. 52), this court said: "It has been argued that a sale of the premises on execution and purchase occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and the sale, therefore, in such a case should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court to abide the result of the litigation, and to be applied to the payment of the judgment creditor who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made. And in order to effect this, the court must administer it independently of any rights acquired by third persons pending the litigation. Otherwise the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless."

So in *Ames v. Trustees of Birkenhead Docks* (20 Beav. 332), Lord Romilly, Master of the Rolls, said that it is an idle distinction that the rule forbidding any interference with property in the course of administration in the Court of Chancery, only applies to property actually in the hands of the receiver, and declared that it applied to debts, rents, and tolls, which the receiver was appointed to receive.

It is next asserted by the plaintiff that the fact that the receiver in this case is in possession of, and is conducting the business of, a railroad as a common carrier, takes his case out

of the rule that he is only answerable to the court by which he is appointed, and cannot be sued without its leave. Her contention is that parties who deal with such a receiver, either as freighters or passengers upon his railroad, may for any injury suffered, either in person or property, sue him without leave of the court by which he was appointed.

We do not perceive how the fact that the receiver, under the orders of the court, is doing the business usually done by a common carrier makes his case any exception to the rule under consideration. It was said by this court in *Cowdrey* v. *Galveston, &c. Railroad Co.* (93 U. S. 352), that "the allowance for goods lost in transportation, and for damages done to property whilst the road was in the hands of the receiver, was properly made. The earnings received were as much chargeable with such loss and damage as they were chargeable with the ordinary expenses of managing the road. The bondholders were only entitled to what remained after charges of this kind, as well as the expenses incurred in their behalf, were paid." This puts claims against the receiver, in his capacity as a common carrier, on the same footing precisely as the salaries of his subordinates, or as claims for labor and material used in carrying on the business. If a passenger on the railroad, who is injured in person or property by the negligence of the servants of the receiver, can, without leave, sue him to recover his damages, then every conductor, engineer, brakeman, or track-hand can also sue for his wages without leave. To admit such a practice would be to allow the charges and expenses of the administration of a trust property in the hands of a court of equity to be controlled by other courts, at the instance of impatient suitors, without regard to the equities of other claimants, and to permit the trust property to be wasted in the costs of unnecessary litigation.

Such is not the course and practice of courts of equity in administering a trust estate. The costs and expenses of the trust are allowed by the court upon a reference to its own master. If the adjustment of the claim involves any dispute in regard to the alleged negligence of the receiver, or any other fact upon which his liability depends, or in regard to the amount of the damages sustained by a party, the court, in a

proper case, in the exercise of its legal discretion, either of its own motion or on the demand of the party injured, may allow him to sue the receiver in a court of law, or direct the trial of a feigned issue to settle the contested facts.

The claim of the plaintiff, which is against the receiver for a personal injury sustained by her while travelling on the railroad managed by him, stands on precisely the same footing as any of the expenses incurred in the execution of the trust, and must be adjusted and satisfied in the same way.

We, therefore, think that the demand of the plaintiff is not of such a nature that it may be prosecuted by suit without leave of the court.

The plaintiff lastly contends that want of leave to bring the suit does not take away the jurisdiction of the court in which it was brought to hear and determine it, but only subjects the plaintiff to liability to be attached for contempt, or to be enjoined from its further prosecution. In other words, she says that leave to prosecute the suit is not a jurisdictional fact, and that, therefore, the plea to the jurisdiction should not have been sustained.

Our decision upon this question will be limited to the facts of this case, which are that the receiver was appointed by a court of the State of Virginia, and the property in course of administration was in that State; the suit was brought in a court of the District of Columbia, a foreign jurisdiction, and the cause of action was an injury received by plaintiff in the State of Virginia, by reason of the negligence of the defendant while carrying on the business of a railroad, under the orders of the court by which he was appointed. No leave was obtained to bring the suit, and it does not appear that any application was made, either to the receiver or to the court by which he was appointed, to allow and pay the demand of the plaintiff.

Upon these facts we are of opinion that the Supreme Court of the District of Columbia had no jurisdiction to entertain a suit.

This point has been substantially settled by this court in the case of *Peale* v. *Phipps*, 14 How. 368.

In that case it appeared that, under a law of the State of

Mississippi, by the decree of the Circuit Court of Adams County in that State, the charter of the Agricultural Bank at Natchez was declared forfeited and the corporation dissolved, and Peale, the plaintiff in error, appointed trustee and assignee of its assets, and was the sole legal representative of the corporation ; that he became legally liable to the creditors of the bank to the extent of the assets, and that he had assets in his possession sufficient to pay all the debts of the corporation. The defendants in error claimed that there was due them from the bank a large sum of money on account of mesne profits, &c., of certain real estate in Natchez, from which they had been unlawfully expelled by the bank, and the possession of which they had recovered from the bank in an action of ejectment.    The defendants in error presented their claim to Peale, the receiver, for allowance as a valid claim against the bank, who refused to admit or allow it, or any part of it.

Thereupon the defendant in error brought suit against Peale in the United States Circuit Court for the Eastern District of Louisiana, to recover said mesne profits, and effected service upon him in that district.    Peale, among other defences, filed an exception, in which he denied the jurisdiction of the court. This was overruled and judgment was rendered against him for $20,058, to be satisfied out of the assets of the bank in the hands of Peale as trustee.    The case having been brought on error to this court, the judgment was reversed.    The court, Mr. Chief Justice Taney delivering its opinion, said : " As we think this exception," the one just mentioned, " decisive against the jurisdiction of the Circuit Court of Louisiana, it is unnecessary to set out the other exceptions.    We see no ground upon which the jurisdiction of the court can be sustained. The plaintiff in error held the assets of the bank as the agent and receiver of the court of Adams County and subject to its order, and was not authorized to dispose of any assets or pay any debts due from the bank, except by order of the court. He had given bond for the performance of his duty, and would be liable to an action if he paid any claim without the authority of the court from which he received his appointment and to which he was accountable.    The property in legal contemplation was in the custody of the court of which he was an

officer, and had been placed there by the laws of Mississippi. And while it thus remained in the custody and possession of that court, awaiting its order and decision, no other court had a right to interfere with it and wrest it from the hands of its agent and thereby put it out of his power to perform his duty." And the court declared that the facts stated in the petition showed " that the Circuit Court of Louisiana had no jurisdiction " of the case.

That case differs from the one now under consideration only in this, that it was a suit to recover a judgment against the trustee and receiver upon a demand due from the bank before his appointment; while the present case seeks to establish a demand against the receiver for a claim which, according to the decision of this court ( *Cowdrey* v. *Galveston, &c. Railroad Co., supra*), forms a part of the charges and expenses of executing that trust. Such charges are specially subject to the control and allowance of the court which is administering the trust property.

We think, therefore, that the case just cited is decisive of this.

The argument is much pressed, that by leaving all questions relating to the liability of receivers in the hands of the court appointing them, persons having claims against the insolvent corporation, or the receiver, will be deprived of a trial by jury. This, it is said, is depriving a party of a constitutional right. To support this view the following cases are cited : *Palys* v. *Jewett*, New Jersey Court of Error and Appeals, Am. Law Reg., Sept., 1880, 553 ; *Kinney* v. *Crocker*, 18 Wis. 74 ; *Allen* v. *Central Railroad of Iowa*, 42 Iowa, 683.

But those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity.

Thus, upon a bill filed for an injunction to restrain the infringement of letters-patent, and for an account of profits for past infringement, it is now the constant practice of courts of

equity to try without a jury issues of fact relating to the title of the patentee, involving questions of the novelty, utility, prior public use, abandonment, and assignment of the invention patented. The jurisdiction of a court of equity to try such issues according to its own course of practice is too well settled to be shaken. *Rubber Company* v. *Goodyear*, 9 Wall. 788; *Cawood Patent*, 94 U. S. 695; *Marsh* v. *Seymour*, 97 id. 348.

So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods. The bankruptcy court may, and in cases peculiarly requiring such a course will, direct an action or an issue at law to aid it in arriving at a right conclusion. But this rests in its sound discretion. True, if one claims that the assignee has wrongfully taken possession of his property as property of the bankrupt, he is entitled to sue him in his private capacity as a wrong-doer in an action at law for its recovery.

Very analogous to the case of an assignee in bankruptcy is that of a receiver of an insolvent railroad company or other corporation. Claims against the company must be presented in due course, as the court having charge of the case may direct. But if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting *ultra vires*. *Parker* v. *Browning*, 8 Paige (N. Y.), 388; *Paige* v. *Smith*, 99 Mass. 395; *Hills* v. *Parker*, 111 id. 508. So far the case seems plain. But if claims arise against the receiver as such, whilst acting under the powers conferred on him, whether for labor performed, for supplies and materials furnished, or for injury to persons or property, then a question of some difficulty arises as to the proper mode of obtaining satisfaction and redress. The new and changed condition of things which is presented by the

insolvency of such a corporation as a railroad company has rendered necessary the exercise of large and modified forms of control over its property by the courts charged with the settlement of its affairs and the disposition of its assets.    Two very different courses of proceeding are presented for adoption. One is the old method, usually applied to banking, insurance, and manufacturing companies, of shutting down and stopping by injunction all operations and proceedings, taking possession of the property in the condition it is found at the instant of stoppage, and selling it for what it will bring at auction. The other is to give the receiver power to continue the ordinary operations of the corporation, to run trains of cars, to keep the tracks, bridges, and other property in repair, so as to save them from destruction, and as soon as the interest of all parties having any title to or claim upon the corpus of the estate will allow, to dispose of it to the best advantage for all, having due regard to the rights of those who have priority of claim.

It is evident that the first method would often be highly injurious, and result in a total sacrifice of the property.    Besides, the cessation of business for a day would be a public injury.    A railroad is authorized to be constructed more for the public good to be subserved, than for private gain.    As a highway for public transportation it is a matter of public concern, and its construction and management belong primarily to the Commonwealth, and are only put into private hands to subserve the public convenience and economy.    But the public retain rights of vast consequence in the road and its appendages, with which neither the company nor any creditor or mortgagee can interfere.    They take their rights subject to the rights of the public, and must be content to enjoy them in subordination thereto.    It is, therefore, a matter of public right by which the courts, when they take possession of the property, authorize the receiver or other officer in whose charge it is placed to carry on in the usual way those active operations for which it was designed and constructed, so that the public may not suffer detriment by the non-user of the franchises. And in most cases the creditors cannot complain, because their interest as well as that of the public is promoted by prevent-

ing the property from being sacrificed at an untimely sale, and protecting the franchises from forfeiture for non-user.

As a choice, then, of least evil, if not of the most positive good (but generally of the latter also), it has come to be settled law that a court of equity may, and in most cases ought to, authorize its receiver of railroad property to keep it in repair, and to manage and use it in the ordinary way until it can be sold to the best advantage of all interested. The power of the court to do this was expressly recognized in *Wallace* v. *Loomis*, 97 U. S. 146.

But here arises a dilemma. If the receiver is to be suable as a private proprietor of the railroad would be, or as the company itself whilst carrying on the business of the railroad was, it would become impossible for the court to discharge its duty to preserve the property and distribute its proceeds among those entitled to it according to their equities and priorities. It has, therefore, been found necessary, and has become a common practice for a court of equity, in its decree appointing a receiver of a railroad property, to provide that he shall not be liable to suit unless leave is first obtained of the court by which he was appointed.

If the court below had entertained jurisdiction of this suit, it would have been an attempt on its part to adjust charges and expenses incident to the administration by the court of another jurisdiction of trust property in its possession, and to enforce the payment of such charges and expenses out of the trust property without the leave of the court which was administering it, and without consideration of the rights and equities of other claimants thereto. It would have been an usurpation of the powers and duties which belonged exclusively to another court, and it would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities.

We therefore declare it as our opinion that when the court of one State has a railroad or other property in its possession for administration as trust assets, and has appointed a receiver to aid it in the performance of its duty by carrying on the business to which the property is adapted, until such time as it can be sold with due regard to the rights of all persons interested

therein, a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the State in which he was appointed and in which the property in his possession is situated, based on his negligence or that of his servants in the performance of their duty in respect of such property.

*Judgment affirmed.*

MR. JUSTICE MILLER dissenting.

The rapid absorption of the business of the country of every character by corporations, while productive of much good to the public, is beginning also to develop many evils, not the least of which arises from their failure to pay debts and perform the duties which by the terms of their organization they assumed. One of the most efficient remedies for the failure to pay, when it arises from inability, is to place the corporation in the hands of a receiver, that its affairs may be wound up, its debts discharged, and the remaining assets, if any there be, distributed among its stockholders. Of the beneficial results of this remedy there can be little doubt. When it is applied with despatch, and the effects of the insolvent corporation are faithfully used to meet its liabilities and its dead body is buried out of sight as soon as possible, no objection can be made to the procedure, and all courts and good citizens should contribute, as far as they may, to this desirable object.

In regard, however, to a certain class of corporations, — a class whose operations are as important to the interests of the community and as intimately connected with its business and social habits as any other, — the appointment of receivers, as well as the power conferred on them, and the duration of their office, has made a progress which, since it is wholly the work of courts of chancery and not of legislatures, may well suggest a pause for consideration. It will not be necessary to any observing mind to say that I allude to railroad corporations. Of the fifty or more who own or have owned the many thousand miles of railway in my judicial circuit, I think I speak within limits in saying that hardly half a

dozen have escaped the hands of the receiver. If these receivers had been appointed to sell the roads, collect the means of the companies, and pay their debts, it might have been well enough. But this was hardly ever done. It is never done now. It is not the purpose for which a receiver is appointed. He generally takes the property out of the hands of its owner, operates the road in his own way, with an occasional suggestion from the court, which he recognizes as a sort of partner in the business; sometimes, though very rarely, pays some money on the debts of the corporation, but quite as often adds to them, and injures prior creditors by creating a new and superior lien on the property pledged to them.

During all this time he is in the use of the road and rolling-stock, and performing the functions of a common carrier of goods and passengers. He makes contracts and incurs obligations, many of which he fails to perform.

The decision which has just been announced declares that for these failures he cannot be sued in a court of law; that by virtue of his receivership, he and all his acts, and the business of the road, are exempted from the operation of the common law, and that all parties deal with him on the implied understanding that they abandon the right to have their complaints tried by jury or by the ordinary courts of justice, and can only obtain such relief as may be had at the hands of a master in chancery of the court which appointed him.

When a receiver appointed to wind up a defunct corporation has no power to make new contracts, — when his sole duty is to convert the property into a fund for the payment of debts, and for distribution among those who are entitled to it, — a very strong reason exists why the court which appointed him should alone control him in the performance of his duty. In such cases, the Court of Chancery has the undoubted right to protect him by injunction against parties suing him in another court, and to punish them for contempt.

*Wiswall* v. *Sampson* (14 How. 52) and *Peale* v. *Phipps* (id. 368) recognize this principle. In the former case the court decided that a sale of property under a judgment of one court, which was in the actual possession of a receiver appointed by

another court, did not confer a valid title as against the sale of the same property subsequently made under an order of the court whose receiver had held possession all the time. The court did not decide that he could not be sued at law for any tort committed by him as receiver.

*Peale* v. *Phipps* carries the doctrine to an extent to which it had not been carried before, but it was based upon the proposition that Peale, as the trustee under the law of Mississippi, appointed by a court of that State to close out and distribute the assets of a broken bank, could not, as such trustee, be made amenable to the jurisdiction of a court of Louisiana. The reason being that the fund, out of which alone the plaintiffs could be satisfied, was in the control of the court in Mississippi. The debt sued for was created by the bank before it was placed in the hands of the receiver. When he was appointed, the bank in effect ceased to exist, and could neither do business nor contract debts. There remained solely the duty of realizing its assets and paying its debts.

In the case before us the plaintiff sues to recover damages for a personal injury, caused by an act done by the receiver or his agents in the transaction of business as a common carrier, in which he was largely and continuously engaged. Why should the receiver not be sued like any one else on such a cause of action in any court of competent jurisdiction?

The reply is, because he is a receiver of the road on which the plaintiff was injured, and holds his appointment at the hands of a Virginia court of chancery. If this be a sufficient answer, then the railroad business of the entire country, amounting to many millions of dollars per annum, may be withdrawn from the jurisdiction of the ordinary courts having cognizance of such matters, and all the disputes arising out of these vast transactions must be tried alone in the court which appointed the receiver. Not only this, but the right of trial by jury, which has been regarded as secured to every man by the constitutions of the several States and of the United States, is denied to the person injured, and though his case has no element of equitable jurisdiction he is compelled to submit it to a court of chancery or to one of the masters of such a court.

In an action for a personal injury, which has always been considered as eminently fitted for a jury, especially in the assessment of damages, this constitutional right is denied, because the receiver of a railroad and not its owners committed the wrong.

Before I can give my assent to such a doctrine I must be well assured that the law as heretofore expounded demands it.

So far from entertaining such a conviction, I think that the doctrine is at variance with the principles which govern the relations of common-law courts and courts of equity where, as in the courts of the United States, these jurisdictions have been kept separate.

In England, in the contests between these courts it was never claimed that the court of chancery could act directly upon the court of law, or that the latter was bound in any way to follow the decisions of the former. Nor could the Chancellor direct his writ to the common-law court or its officers; but if it was determined to give any equitable relief in the matter pending before the law court, the injunction or other chancery process was directed to the suitor. Upon him alone was the power of the court exercised. In such a case as this, if the Court of Chancery was of opinion that the plaintiff was improperly interfering with the functions of the receiver, it could restrain him by injunction or punish him by attachment for contempt. If, however, the plaintiff could not be reached by that court, it is no more than the evil of many other cases where a defendant cannot be found when he is wanted in a court of justice.

But I know of no principle or precedent whereby a court of law, having before it a plaintiff with a cause of action of which it has jurisdiction, and a defendant charged with an act also within the jurisdiction, is bound or is even at liberty to deny the plaintiff his lawful right to a trial because the defendant is a receiver appointed by some other court, and to leave the suitor to that court for remedy, where it is known that some of the most important guaranties of the trial to which he is entitled, and which are appropriate to the nature of his case, will be denied him.

Whatever courts of equity may have done to protect their

receivers, or the fund in their hands, it is no part of the duty of courts of law to deny to suitors properly before them the trial of their rights, which justice requires and the Constitution and the law guarantee.

These views are well sustained by the authorities collected in the brief of the plaintiff's counsel, especially in *Angel* v. *Smith*, 9 Ves. Jr. 335 ; *Hill* v. *Parker*, 111 Mass. 508 ; *Chautauque County Bank* v. *Risley*, 19 N. Y. 369 ; *Camp* v. *Barney*, 4 Hun (N. Y.), 373 ; *Sprague* v. *Smith*, 29 Vt. 421.

The doctrine is stated with admirable precision by the Supreme Court of Wisconsin in the case of *Kinney* v. *Crocker* (18 Wis. 74), in the following language : " But in all these cases it is not a question of jurisdiction in the courts of law, but only a question whether equity will exercise its own acknowledged jurisdiction of restraining suits at law under such circumstances and itself dispose of the matter involved. It follows that although a plaintiff in such case, desiring to prosecute a legal claim for damages against a receiver, might, in order to relieve himself from the liability to have his proceeding arrested by an exercise of its equitable jurisdiction, very properly obtain leave to prosecute ; yet his failure to do so is no bar to the jurisdiction of the court of law, and no defence to an otherwise legal action in the trial.  There can be no room to question this conclusion in all cases where there is no attempt to interfere with the actual possession of property which the receiver holds under the order of the Court of Chancery, but only an attempt to obtain a judgment at law in a claim for damages."

It is asserted by counsel, whose brief shows the extent of his research, that no case can be found where such a plea has been sustained in an English court.  I regret to say that in my opinion the judgment just rendered is unsupported by authority and unsound in principle.