# FEDARWISCH *v.* ALSOP.

EQUITY; CREDITOR'S BILLS; SET-OFF; DISMISSAL OF ACTION FOR WANT
OF PROSECUTION, EFFECT OF.

A creditor having a claim *ex contractu* against another, not reduced to
judgment, may maintain a bill in equity to set off such claim against
a judgment on a claim *ex delicto* recovered against him by such other
person, if the latter is insolvent; and equitable relief under such
circumstances is not precluded where, at the time of the filing of
such a bill, complainant has an action at law pending to enforce his
claim, and, during the pendency of the equity proceedings, the action
at law is dismissed for want of prosecution, such dismissal not
constituting an adjudication of the claim so as to prevent further
litigation of it; *distinguishing* Droop v. Ridenour, 9 App. D. C. 95.

No. 1065. Submitted April 12, 1901. Decided May 22, 1901.

HEARING on an appeal by the complainant from a decree
of the Supreme Court of the District of Columbia, sustain-
ing a demurrer to and dismissing a bill in equity to set off
a claim *ex contractu* against a judgment obtained by the de-
fendant against the complainant on a claim *ex delicto*.
*Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree of the Supreme Court of
the District of Columbia dismissing a bill of complaint filed
for the purpose of procuring a set-off.

On April 9, 1897, the appellee, Thaddeus Alsop, as plain-
tiff in a suit at common law in the Supreme Court of the
District, recovered judgment for the sum of $150 against
the appellant, Kunigunda Fedarwisch, who is his mother-
in-law, on account of an assault and battery committed upon

him by the appellant and two other persons. At the time of the rendition of this judgment, there was pending in the same court another suit at common law instituted by the appellant as plaintiff against the appellee as defendant to recover the sum of $366.67 on account of various matters of contract. This latter suit was instituted after the appellee's suit against the appellant. Being the first to prosecute his suit to judgment, the appellee, it seems, threatened to issue execution. Thereupon the appellant instituted the present proceeding by filing her bill in equity to enjoin the appellee from proceeding.

In this bill, after the statement of the counterclaims of the parties, their nature and condition, the appellant alleged her own solvency and the possession of ample estate out of which the appellee's judgment could be satisfied, and on the other hand the utter insolvency of the appellee, and that he had no property, real or personal, from which any judgment against him could be satisfied. And the prayer of the bill was that the complainant's claim should be decreed to be a set-off against the defendant's judgment; that the judgment should be decreed to be satisfied; that the defendant should be enjoined from executing it; that an accounting should be had; that the complainant should have a decree for any balance that might be found due to her, and for general relief.

Upon this bill there was a temporary restraining order issued. Subsequently the appellee filed his answer, and there was joinder of issue.

At this stage of the proceedings, the attorneys of the appellee intervened with a petition that they had a lien on the appellee's judgment for their fees, amounting to $95, which was superior to the appellant's equity, and asking that the appellant should be required to pay this amount, on penalty of the dissolution of the restraining order in the event of nonpayment. Their claim seems to have been allowed; for they received and receipted for the money, which was paid to them by the appellant.

Both the appellant's suit at law against the appellee and this present proceeding in equity seem then to have been permitted to slumber for some time.

By a stipulation filed in this cause it appears that the suit at law was commenced on March 31, 1897; that the appellee filed twelve pleas thereto, including plea of the general issue and the statute of limitations; that to the plea of the statute of limitations there was a replication of a new promise; that ultimately, on May 1, 1897, issues were joined; that on May 4, 1897, the cause was duly calendared for trial; that on December 21, 1898, the cause was sent to the " stet " docket of the court under a rule which provided for such action when a cause remained on the trial calendar for several successive terms without being actually brought to trial; and that, having remained on the " stet " docket for upwards of a certain specified period of time without any action looking towards a disposition of it, it was, on February 3, 1900, at the instance of the defendant, the appellee here, dismissed in the clerk's office, by the clerk, acting under authority of a rule so authorizing him to do, but which was done without any notice to the plaintiff in the suit.

It was not, however, until several months afterwards, on November 2, 1900, that any further action was taken by either party, so far as the record before us shows. On this last-mentioned day a stipulation was filed, entered into by the parties through their respective attorneys or solicitors, whereby it was agreed that the appellee should withdraw his answer and interpose a general demurrer to the bill; that the proceedings in the law cause to its conclusion, as above narrated, should be considered by the court as facts in the case; and that, if the demurrer should be overruled, the complainant should have final decree, as prayed; but that, if the demurrer should be sustained, the bill should be dismissed.

Upon the bill of complaint, the demurrer thereto and this stipulation, the cause was heard. The court below sustained the demurrer, and dismissed the bill; and from the decree of dismissal the present appeal has been prosecuted.

*Mr. Thomas M. Fields* for the appellant.

*Mr. Charles A. Douglass, Mr. E. S. Douglass* and *Mr. Levi H. David* for the appellee:

1. Complainant having alleged in her bill that, prior to the filing of said complaint, a suit at law had been commenced, "*which suit is still pending,*" this was the inducing cause which prompted the court to grant the restraining order enjoining the defendant (appellee) from enforcing the collection of his judgment in law cause 40,238 (assault and battery case) "until the further order of the court." The restraining order was passed for the purpose of enjoining defendant from proceeding by execution in law cause No. 40,238, *and to await the determination of law cause No. 40,895.* We submit that the case of *Droop* v. *Ridenour,* 9 App. D. C. 95, is absolutely decisive of this case.

2. It is to be noted in this case the complainant does not allege fraud or that defendant is a nonresident, or that service cannot be obtained upon him, or that there is any fund within the control of a court of equity, concerning which complainant has a lien upon or interest in. Judgment is necessary to establish the measure of the demand of the complainant for which he seeks satisfaction in chancery." *Smith* v. *Railroad,* 95 U. S. 398. See also *Oakley* v. *Pound,* 14 N. J. Eq. 178; *Case* v. *Bauregard,* 101 U. S. 68; *Hatch* v. *Dana,* 101 U. S. 205. The mere fact that the debtor is insolvent or in failing circumstances is not sufficient. *Lawson* v. *Grubbs,* 44 Ga. 466; *Hall* v. *Joiner,* 1 S. C. 186; *Monroe* v. *Cutter,* 9 Dana (Ky.), 93. Due regard being had to the condition of the record, can it not be said that the appellee was and is entitled to a trial by jury as guaranteed by the Seventh Amendment to the Constitution? *Cates* v. *Allen,* 149 U. S. 451; *Scott* v. *Neeley,* 140 U. S. 106. This right is not always satisfied by issues sent out of chancery. *Whitehead* v. *Shattuck,* 138 U. S. 146; *Buzard* v. *Houston,* 119 U. S. 347; *Hess* v. *Horton,* 2 App. Cas. D. C. 81.

Mr. Justice Morris delivered the opinion of the Court:

There is no opinion of the court filed in the case or to be found in the record; and we are not specifically advised of the grounds upon which its decision was based. But whatever those grounds may have been, it is very clear to us that, under the authority of the case of *North Chicago Rolling Mill Company* v. *St. Louis Ore and Steel Company,* 152 U. S. 596, the decree appealed from must be reversed. In that case, under a condition of things not substantially different from the condition here, it was held that " crossdemands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice." And again it was said in the same case: " It is well established that equity will entertain jurisdiction and afford relief against the collection of a judgment where in justice and good conscience it ought not to be enforced, as where there is a meritorious equitable defense thereto, which could not have been set up at law, or which the party was, without fault or negligence, prevented from interposing."

And again in the same case the Supreme Court said: " By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference."

This case definitely establishes the proposition of law for us, that a creditor, having unliquidated demands against another not reduced to judgment, may set them off in equity against a judgment recovered against him by that other person, if there has been no opportunity to set them off in the suit which led to the judgment, and if the person who holds the judgment is insolvent. That is precisely the condition here; and the decision of our tribunal of last resort renders unnecessary any further discussion of the question.

The argument on behalf of the appellee, however, seems to assume that some different rule should prevail in the pres-

ent case, because it was shown by the bill of complaint and the stipulation between the parties, that at the time of the filing of the bill in equity, there was a suit at common law pending wherein the claim of the complainant was involved, and that this suit was abandoned by the complainant.

The abandonment of that suit by the complainant and its dismissal for failure of prosecution, as is well established by all the authorities, do not constitute an adjudication of the claim such as to preclude the party from further litigation of it. To permit it to be dismissed for want of prosecution is no more than a voluntary dismissal. Neither one is the equivalent of a judgment on the merits. If the plaintiff in that suit at law had proceeded therein to a final determination on the merits and there had been final judgment against her, it might well be that a court of equity if it still retained the bill for an injunction would thereupon dissolve the injunction and dismiss the bill. But there was no obligation on the plaintiff to proceed with that suit at law. She might have dismissed it voluntarily after she had filed her bill in equity and left the whole controversy thereafter to the arbitrament of equity. That she abandoned it and made no further attempt to prosecute it can make no difference. Dismissal of the suit, voluntary or involuntary on her part, leaves the question of the merits of the claim wholly undetermined, precisely as though no suit had ever been instituted. A cause for the cognizance of a court of equity arose, when the appellee had procured his judgment and his insolvency was apparent and appellant had outstanding claims which she could not have introduced into the appellee's suit against her on account of her claims being *ex contractu,* while his claim was one *ex delicto.* When this cause for the intervention of equity arose, there was no longer any necessity for the prosecution of the suit at common law; and when the bill of complaint was filed in equity the court of equity acquired jurisdiction to determine the whole controversy, and all the issues between the parties. The court of equity was not restricted to action ancillary to that of the court of common law. This is well-established and fundamental doctrine and needs no citation of authorities in support of it.

It is argued on behalf of the appellee that the case of *Droop* v. *Ridenour*, 9 App. D. C. 95, establishes a somewhat different doctrine, and that the appellant is not entitled to deprive the appellee of his right to a trial by jury by going into a court of equity. This argument might have greater plausibility if the appellee himself had not been the active agent in the dismissal of the appellant's suit at law, or if that suit were still pending. But what was said in the case cited is entirely true in the present case also, and antagonistic to the appellee's position. It was said:

" If, therefore, a judgment at law could be obtained, it could not be executed by legal process against the equitable interest of the defendant in the property sought to be reached by this proceeding; and the ultimate resort, after all, would be to a court of equity. The only objection that the defendant can urge is, that the claim has not been reduced to judgment upon trial by jury, or that he has not had the benefit of trial by jury in the establishment of the claim. But a right to trial by jury is not so absolute as that it may be rightfully insisted upon under all circumstances. *Barton* v. *Barbour*, 104 U. S. 126. It is by the conduct of the defendant himself that he may elect to forego the right of trial by jury." *Droop* v. *Ridenour*, 9 App. D. C. 95, 108.

So, in the present case, if the plaintiff in the lawsuit had succeeded in obtaining judgment in her favor upon her claim, she would still have been under the necessity of recurring to the court of equity to set off the one judgment against the other; and it was the action of the appellee in attempting to enforce his own judgment by execution before the appellant had opportunity to procure an adjudication of her claim at common law, coupled with the conceded fact of the utter insolvency of the appellee, which compelled the appellant to have recourse to a court of equity. It is said that he was clamorous for a trial of his liability by a jury; but, if he was, he certainly resorted to a remarkable method for the manifestation of his desire.

But it is said further in the case of *Droop* v. *Ridenour*, just cited:

"It is by the conduct of the defendant himself that he may elect to forego the right of trial by jury; for he may enjoy the right of such trial, if he thinks proper to appear to the pending action at law, and submits to the trial of that case. Upon entering his appearance to that action, he will be entitled to a stay of this proceeding to await the result of the action at law; and if that action be determined against the plaintiffs therein, it will end the present proceeding. But if no such appearance be entered by the defendant, the complainants will be entitled to proceed in this suit."

And it seems to be inferred from this that in the present case the appellant was compellable to proceed with her suit at common law, and could not proceed with the equitable proceeding until the common-law suit was decided. In fact, the inference would seem to be that the whole purpose of the equity suit was simply to maintain the existing status of things until a decision would be had in the suit at common law. But this is plainly an error, and a misapprehension of the scope of the decision in the case of *Droop* v. *Ridenour*.

That was a case where a creditor, whose claim had not been reduced to judgment, but who had instituted suit therefor at common law against the debtor, who had absconded from the jurisdiction for the purpose of evading his creditors, and upon whom, therefore, no service of process had been or could be had, filed a bill in equity against such absconding debtor to subject an equitable interest of the debtor to the payment of the debt, when the debtor had no other property in the jurisdiction out of which the debt could be satisfied by proceedings at law. There the absconding of the debtor from the jurisdiction, coupled with the fact that there was nothing but an equitable interest which could be reached in satisfaction of the claim, is the circumstance which justified recourse to a court of equity. And in the case heretofore cited of *North Chicago Rolling Mill Company* v. *St. Louis Ore and Steel Company,* 152 U. S. 596, nonresidence in such cases was held to justify the intervention of a court of equity, as well as insolvency. But nonresidence is a circumstance over which the defendant always has complete control. By en-

tering an appearance to a suit at common law he may remove and obviate the necessity of a recourse to equity by a plaintiff. Moreover, when there are two suits pending which involve the same subject-matter, one at common law and one in equity, it is familiar law that a defendant may have a stay of proceedings in the one until the other is determined. But such a stay of proceeding, if it is had, does not deprive a plaintiff of the control of his own suit, or of the right to dismiss it, or to permit it to be dismissed, if he thinks proper. Plainly the right to such a stay of proceeding does not mean that a plaintiff must proceed at common law rather than in equity when he has the right to proceed in either; but it means that he should not vex a defendant with two concurrent suits in reference to the same subject-matter.

Under the authorities cited, it necessarily follows that the decree appealed from must be *reversed, with costs. The cause will be remanded to the Supreme Court of the District of Columbia, with directions to vacate the said decree, to overrule the demurrer interposed in the case, and to enter a decree in favor of the complainant in the cause, the appellant here, in accordance with the terms of the stipulation between the parties. And it is so ordered.*