**In re ALLIED SIGN COMPANY, INC., Debtor.**

**No. 99–10488–MAM–11.**

United States Bankruptcy Court, S.D. Alabama.

Jan. 26, 2001.

---

**17.** *Romar Int'l Ga., Inc. v. SouthTrust Bank,* 198 B.R. 401 (Bankr.M.D.Ga.1996).

Russel Myles, Mobile, AL, for Allied Lenders, L.L.C.

Jeffery J. Hartley, Mobile, AL, for Gibbons, Gibbons & Buck, P.C. and Terry J. Buck.

## ORDER GRANTING MOTION FOR LEAVE TO MAINTAIN STATE COURT ACTION

MARGARET A. MAHONEY, Chief Judge.

This case is before the Court on the motion of Allied Lenders, L.L.C. (Allied Lenders) for leave to maintain a state court action. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). For the reasons indicated below, the Court is granting the motion.

### FACTS

Allied Sign Company, Inc. (Allied Sign) filed a chapter 11 bankruptcy case on February 8, 1999. The debtor sought court approval of its choice of an accounting firm to handle its chapter 11 accounting needs. Terry Buck of Gibbons, Gibbons & Buck, P.C. was approved by the Court on February 24, 1999, which approval was ordered effective as of February 8, 1999. On February 9, 1999, Allied Sign filed a motion requesting to use cash collateral in which Allied Lenders had an interest. On March 3, 1999, an order was entered approving cash collateral use. It provided that the debtor would provide "certified" aging statements of accounts receivable upon which its use of cash collateral would be based. The order provided that the aging reports would be "verified by the Debtor's CPA."

On March 3, 2000, the Court converted the case to a chapter 7 case and appointed a trustee. The estate is being liquidated. On July 11, 2000, Allied Lenders filed a

suit in Mobile County Circuit Court against Gibbons, Gibbons & Buck, P.A. and Terry Buck for negligence, wantonness, misrepresentation and breach of contract arising out of the accountants' alleged failure to accurately monitor and verify Allied Sign's accounts.

On October 6, 2000, Gibbons, Gibbons & Buck and Terry Buck filed an answer to the complaint asserting that Allied Lenders needed to obtain bankruptcy court authority to proceed before instituting the suit as required by *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). Allied Sign is now, nunc pro tunc, seeking that approval to the extent it is necessary.

## LAW

The issue to be decided is whether this action should be allowed to proceed in state court. The Court concludes that (1) the state court action is not a "core proceeding" but rather a "related to" proceeding pursuant to 28 U.S.C. § 157(b); (2) bankruptcy court permission is required to bring the matter in state court; and (3) leave should be granted in this case.

## A.

■■■ A core proceeding is one in which the matter at issue is one which " could arise only in bankruptcy." *In re Toledo,* 170 F.3d 1340, 1345 (11th Cir. 1999). A proceeding is "related to" a bankruptcy case if the " outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Miller v. Kemira (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990). The Allied Lenders lawsuit does not affect the debtor's assets or liabilities or any creditor relationships. It is a suit between nondebtors and would be paid from nondebtor assets. The case is "related to" a case under title 11 since it arises from a bankruptcy court order and a relationship created by the bankruptcy case.

The case is unlike the case of *Southmark Corporation v. Coopers & Lybrand (In re Southmark Corporation),* 163 F.3d 925 (5th Cir.1999), which involved a chapter 11 debtor who sued its court appointed examiner's accountant for malpractice. The Fifth Circuit held that that proceeding was a core proceeding because the claim involved a request for denial of fees to Coopers for its work on the examiner's behalf as well as recovery of monies from Coopers to replace an amount Southmark might have received from a third party absent reliance on Cooper's advice. As stated above, this connection to the estate does not exist in this case. With no debtor assets or claims at issue and no allegation of sanctionable conduct by any professional, the relationship to Allied Sign's case is not close. This Court is very concerned about compensation of professionals and the integrity of professionals involved in bankruptcy cases. To the extent it is ever shown that a professional's actions damaged a case, or even might have, or that the validity of the bankruptcy process was compromised by a professional, the Court wants to take swift, prompt action. However, the Court is reluctant to act sua sponte, without all facts, as prosecutor and judge. The Court expects other professionals, the debtor and creditors and the Bankruptcy Administrator to bring improper conduct before this Court for fee disgorgement, malpractice claims, sanctions and/or criminal referrals. None of these actions have occurred in this case.[1] Therefore, as matters stand, the case is

---

1. The Court is not implying in any way that there was improper conduct by the accountant in this case. The Court has no information as to any of the facts at issue. The Court expects that the trustee would seek appropriate relief if there was a reason.

only a "related to" proceeding. This status, although not determinative of the outcome, gives the Court more reason to allow the case to go forward in state court than if it were a core proceeding.

## B.

■■ As a result of an 1881 U.S. Supreme Court case, *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), the general rule has arisen that " before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Id.* at 127, 26 L.Ed. 672. This rule has been applied to bankruptcy trustees and other court appointed professional persons. *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir.2000) (applying to trustee and sales agent). The exception to the rule as stated in 28 U.S.C. § 959 is that suits may be filed without court permission against trustees (and other court appointed professionals per Carter) "with respect to any of their acts or transactions in carrying on the business connected with such property."

■ The cases which construe the meaning of this exception hold that the actions of consolidating, preserving, liquidating and holding assets of a debtor's estate are not acts of "carrying on business." E.g., *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272 (2d Cir.1996); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236 (6th Cir.1993); *Carter*, 220 F.3d at 1252. Actions of a court appointed professional which are normal business functions or related to normal business claims are the type excepted. E.g., *Lehal Realty Assocs.*, 101 F.3d at 276 (stating that statute is intended to "permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for ex-

ample, conducted a retail store"). In this case, a cash collateral order established the duty of the debtor to obtain these reports from its CPA. A bankruptcy order required twice monthly accounts receivable aging statements be delivered to Allied Lenders. The order facilitated the administration of the estate and (it was hoped) the aggregation of assets for a plan. Preparation of reports on assets and the ongoing operations of the debtor are an essential part of every chapter 11 plan. Although utilized by Allied Sign for the purposes of providing information to Allied Lenders, the same information must be provided to the Bankruptcy Administrator as well, in the same or different form. The activity of cataloging the monthly or weekly or biweekly progress of the debtor's financial status is an integral part of a court appointed accountant's job for the bankruptcy case itself. The fact that the information provided allowed the debtor to operate or "carry on its business" or made Allied Lender's monitoring easier does not change the essence of Buck's activity-financial reports on the debtor's progress. It is a court-not business-activity primarily and leave to file an action is necessary. The exception of 28 U.S.C. § 959 from the *Barton* doctrine does not apply.

Therefore, in order to proceed with its state court suit, Allied Lenders needs this Court's approval. Since the action was already commenced, Allied Lenders requires nunc pro tunc approval or the case must be dismissed.

■ Nunc pro tunc or retroactive relief requires unusual circumstances. In a case similar to this one, a creditors' committee in a chapter 11 case filed adversary proceedings to avoid fraudulent transfers when the debtor failed to do so. The committee did not seek authority to file the suits from the bankruptcy court. *Catwil Corp. v. Derf II (In re Catwil Corp.)*,

175 B.R. 362 (Bankr.E.D.Cal.1994). The court granted nunc pro tunc authority to file the suits to the committee. The court held that the factors governing nunc pro tunc employment of counsel did not apply "whereas the policy in the appointment of counsel context is to control the administrative costs of the estate, the policy underlying the prior court approval requirement for actions by creditors committee is to avoid confusion among parties." *Id.* at 366. The factors courts have used to determine whether financing agreements should be validated retroactively seem particularly apropos. *General Electric Capital Corp. v. Hoerner (In re Grand Valley Sport & Marine, Inc.),* 143 B.R. 840 (Bankr.W.D.Mich.1992); *In re Braniff Int'l Airlines, Inc.,* 164 B.R. 820 (Bankr. E.D.N.Y.1994). The factors, which were first established in the case of *In re American Cooler Co.,* 125 F.2d 496 (2d Cir.1942) are First, the court must be confident it would have authorized the postpetition financing if a timely application had been made. Second, the court must be reasonably persuaded that no creditor has been harmed by the continuation of the business made possible by the loan. Third, the debtor and lender must have honestly believed they had the authority to enter into the loan transaction.

■ Grand Valley Sports at 850. In this case, for the reasons indicated in this opinion, the Court would have granted the relief if requested before the suit was filed. No prejudice has been shown. It appears that the only action required of the defendants to date has been the filing of the answer in state court. Allied Lenders had a good faith argument based on the case law that it did not need to seek bankruptcy court authority. Therefore, nunc pro tunc relief will be given Allied Lenders to allow the state court suit to be validated as filed.

### C.

■ The Court concludes that leave to file this case in state court is within the discretion of the Court. This Court could assume jurisdiction because the case is "related to" the bankruptcy case, but should it do so? This motion should be considered under the same factors that bankruptcy courts utilize to determine whether to permissively abstain from hearing a case pursuant to 28 U.S.C. § 1334(c). The factors are those found in *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.),* 81 B.R. 422 (Bankr.S.D.Tex. 1987):(1) the effect or lack thereof on the efficient administration of the estate if the court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding in state court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters; (9) the burden of the court's remaining docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *Id.* at 429.

■ In this case, the majority of the relevant factors favor allowing this case to proceed in state court. No property of the debtor will be affected. No creditors except the parties involved will be affected. The claims are state law negligence and tort claims although based on bankruptcy facts. A jury trial may be requested which is difficult to provide in bankruptcy

court. A malpractice trial would bog down and disrupt this court's usual docket which requires lengthy three to four day weeks of motion and adversary dockets.

Mr. Buck and his firm have argued that this Court's order and its meaning and effect are the focus of this suit. Since the allegations are so tied to a bankruptcy court order, the bankruptcy court should handle the case. In another instance, the Court refused to allow arbitration of a case where it is alleged a creditor violated the automatic stay. *Grant v. Cole, et al (In re Grant)*, 281 B.R. 721 (Bankr.S.D.Ala.2000). However, the cases are different. In the Grant case, the suit benefits the debtor who is hurt by the stay violation and may deserve compensation. *Id.* In this case, the suit benefits a single creditor and not the debtor who is not alleged to be damaged by the accountants' actions.

If at any point Allied Sign Company is brought into the litigation in a manner which could result in benefit or detriment to the estate, then this Court believes removal of the action to bankruptcy court might be appropriate. The potential impact on the estate is the key.

THEREFORE, IT IS ORDERED that the motion of Allied Lenders, L.L.C. for leave to maintain action in state court is GRANTED with approval being nunc pro tunc to the date of commencement of the suit in state court.