DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Western Reserve Masonic Community, Inc., appeals from the judgment of the Medina County Court of Common Pleas denying its motion to pursue claims against a receivership. This Court affirms.
 I. {¶ 2} On October 2, 2001, Roth Interests, Ltd., ("Receiver") was appointed as Receiver to manage The Oaks at Medina ("The Oaks"), a retirement facility. The Receiver was appointed at the request of Bank One, N.A., who had begun foreclosure proceedings against The Oaks. Bank One contended that a receiver was required to protect its interests because The Oaks had begun negotiations with Appellant regarding the sale of the property which was subject to the foreclosure proceedings.
 {¶ 3} The negotiations between Appellant and The Oaks culminated in the creation of an Asset Purchase Agreement. Through this agreement, Appellant completed the purchase of assets from The Oaks on March 5, 2002. The instant matter involves the dispute that arose between Appellant and the Receiver regarding payments made by residents of The Oaks for March 2002. Prior to the closing of the sale of The Oaks' assets, the Receiver collected the monthly care costs from many residents for the entire month of March. As a result, Appellant filed a motion on March 8, 2002, requesting that the Receiver provide an accounting for those payments. Appellant contended that such an accounting would demonstrate that the Receiver had improperly retained assets that Appellant was entitled to receive.
 {¶ 4} Appellant's motion for an accounting resulting in a hearing before the magistrate. Following a hearing, the magistrate allocated the March payments based upon the four categories in which the parties had agreed to place the payments. The magistrate, however, did not consider Appellant's claim of bad faith at that hearing. On October 1, 2002, Appellant objected to the magistrate's decision arguing that an allocation should not have been made until its bad faith claim had been heard. The trial court overruled Appellant's objections, but did order the magistrate to conduct an evidentiary hearing on Appellant's bad faith claim.
 {¶ 5} On April 16, 2003, the magistrate began an evidentiary hearing, permitting opening statements by the parties and hearing testimony from several witnesses. The hearing was suspended prior to the completion of witness testimony. Following the hearing, the matter was then reassigned to a different trial court judge. At the hearing, Appellant had argued that a delay by the trial court in filing the sale order had caused the closing date to be March 5 rather than March 1. As a result, the trial court judge and magistrate recused themselves from the matter.
 {¶ 6} Following reassignment of the case, the Receiver moved for summary judgment arguing that it was entitled to the March payments. Appellant filed a memorandum in opposition to the Receiver's motion and requested additional time to respond so that the Receiver's president, Dennis Roth, could be deposed. On December 4, 2003, Appellant's motion for an accounting was denied by the trial court, which found that there was no legal authority by which Appellant could request an accounting.
 {¶ 7} In an attempt to have the trial court resolve the still ongoing dispute, on January 15, 2004, Appellant filed a motion requesting leave to file suit against the Receiver. Appellant argued that the Receiver had breached the Asset Purchase Agreement by pursuing the March payments in bad faith. Appellant further argued that the Receiver had committed conversion by retaining the March payments despite Appellant's demands that they be turned over and that the Receiver had misrepresented to the residents how those payments would be allocated between the parties. On October 1, 2004, the trial court denied Appellant's motion for leave to file claims against the Receiver, terminated any remaining claims between the parties, and discharged the Receiver. Appellant has timely appealed from that order, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN REFUSING TO HEAR [APPELLANT'S] CLAIMS AGAINST THE RECEIVER."
 {¶ 8} In its first assignment of error, Appellant argues that the trial court erred in denying its motion for leave to file claims against the Receiver. Specifically, Appellant asserts that the trial court abused its discretion in denying its motion because valid claims exist against the Receiver. We disagree.
 {¶ 9} Appellant asserts that this Court should conduct a de novo review to determine whether valid claims exist against the receiver. We decline to conduct such a broad review. Permitting a party to sue a receiver without leave of court would render it "impossible for the court to discharge its duty to preserve the property and distribute its proceeds among those entitled to it according to their equities and priorities. Barton v. Barbour (1881), 104 U.S. 126, 136. Rather, we agree that "it is entirely within the discretion of the court" whether to permit a party to bring claims against a receiver. Dorr Run Coal Co. v.Nelsonville Coal Co. (1910), 21 Ohio Dec. 198, 200. This Court, therefore, will not overturn a decision by the trial court denying a motion for leave to file claims against a receiver absent an abuse of discretion. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 10} Upon appointment, the Receiver was ordered "to honor the terms of all existing agreements." Specifically, the Receiver was "authorized and directed on behalf of The Oaks to perform in accordance with and to honor [the] `Asset Purchase Agreement' dated as of August 28, 2001, between The Oaks and [Appellant]." Each of the claims Appellant sought to file against the Receiver arise from alleged violations of the Asset Purchase Agreement. Upon our independent review, we cannot say that the trial court erred in finding that the Receiver had not violated the Asset Purchase Agreement or proceeded in bad faith.
 {¶ 11} Section 1.8 of the Asset Purchase Agreement provides as follows:
"Prorations. Except for monthly payments received by Seller for services provided to patients and residents of the Facility (which shall be retained by the Seller and not prorated), all normal and customarily proratable items * * * shall be prorated as of the Closing Date[.]"
Appellant has argued that the above provision permits the Receiver to retain payments for only March 1 through March 5 because it did not provide services after March 5. However, "[i]n the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." Farmers Natl. Bank v.Delaware Ins. Co. (1911), 83 Ohio St. 309, paragraph six of the syllabus. In order to accept Appellant's assertions, this Court would necessarily render Section 1.8 meaningless, which we decline to do.
 {¶ 12} There is no dispute between the parties that the Receiver provided services to the residents between March 1 and March 5. In addition, there is no dispute that the residents were obligated to pay for these services by paying a monthly fee. Appellant argues that the emphasis in Section 1.8 should be placed upon the words "for services provided" and that such an interpretation would preclude the Receiver from retaining payments attributable to services rendered after March 5. This interpretation, however, would render the exception to prorating items meaningless. The plain language of the Asset Purchase Agreement provides that monthly payments made by the residents for services provided would not be prorated. As such, the plain language of the agreement supports the result reached by the trial court. The Receiver rendered services in the month of March, received payment for the month of March, and that payment was not prorated.
 {¶ 13} Appellant has also asserted that the Receiver collected the payments for the month of March in bad faith. In support, Appellant relies upon affidavits from residents regarding a meeting Dennis Roth had with the residents at the end of February. This meeting was also audiotaped, and a transcript of that meeting was filed with the trial court. Based upon the evidence before the trial court, we cannot say that it acted unreasonably in denying Appellant leave to file a claim for bad faith.
 {¶ 14} The residents of The Oaks each signed an agreement regarding their residency fees which provided in pertinent part as follows:
"The Resident agrees to pay the Monthly Care Fees for the type of accommodation selected, each month in advance, initially in the amount set forth on the Fee Structure." (Emphasis added.)
The residency contract is clear and unambiguous; the residents would be billed in advance for each month's services. The Receiver was required by his appointment to honor The Oaks' existing contracts, including the residency contract. In spite of the above quoted provision, Appellant asserts that the Receiver acted in bad faith because the residents had typically not been billed in advance for each month. "[E]xtrinsic evidence of a general custom * * * cannot vary the terms of an express contract." Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph three of the syllabus. Consequently, the trial court properly concluded that Receiver's actions in collecting the March payments in advance did not constitute bad faith by relying upon the plain language of the contract.
 {¶ 15} In addition, we find no support for Appellant's assertions that Mr. Roth acted in bad faith by misleading the residents when collecting payments for the month of March. The transcript from that meeting reveals that Mr. Roth stated the following regarding prorating the residents' payments:
"Yes, the whole check goes to me for the month of March. And then to the extent that there is proration, we have a contract that we have prorations for expenses and revenue and we'll take care of that. There's nothing you can do here. It's just like when you had your house and, you know, you close in the middle of the month you made your mortgage, you have an escrow agent, that's why I have all these professionals and why they have professional to work out those allocations."
Through this meeting, the Receiver informed the residents of the impending sale of The Oaks and its impact on their monthly payments. The transcript does not support a conclusion that Mr. Roth misled the residents or pressured them into making their payments early.
 {¶ 16} Accordingly, the trial court did not act unreasonably or in an arbitrary manner in denying Appellant's motion for leave to file claims against the Receiver. Our review of the record reveals that Appellant has no claim for the March payments that the Receiver collected and retained. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RESOLVE DISPUTED CLAIMS BETWEEN [APPELLANT] AND THE RECEIVER."
 {¶ 17} In its second assignment of error, Appellant argues that the trial court failed to resolve the claims pending between the parties. Specifically, Appellant asserts that the trial court failed to fully resolve which party was entitled to the March 2002 payments. We disagree.
 {¶ 18} The journal entry from which Appellant has appealed denied Appellant's motion for leave to file claims against the Receiver. As a result, Appellant has no remaining claims pending against the Receiver. In addition, this Court can find no support for Appellant's argument that the Receiver has claims pending against Western Reserve. While the Receiver argued in the trial court that it was entitled to certain payments from March 2002, a claim against Western Reserve was not filed and the Receiver, on appeal, does not seek to pursue any claim against Appellant. The trial court also discharged the Receiver in that same entry. Accordingly, any remaining claims by the Receiver would have necessarily been denied by that discharge.
 {¶ 19} While Appellant may not agree with the resolution of its claims by the trial court, the trial court did resolve each of those claims. Each party was left with the March payments in their possession at the time of judgment. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT DEPRIVED [APPELLANT] OF PROPERTY WITHOUT DUE PROCESS OF LAW."
 {¶ 20} In its final assignment of error, Appellant argues that the trial court deprived it of property without due process of law. Specifically, Appellant has asserted that the evidentiary hearing which it was provided was insufficient because it was not given the opportunity to question Mr. Roth due to time constraints. We find that Appellant's argument lacks merit.
 {¶ 21} The U.S Supreme Court has held that due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner."Armstrong v. Manzo (1965), 380 U.S. 545, 552. Based upon the record before this Court, we cannot say that Appellant's due process rights were violated.
 {¶ 22} Appellant's primary contention is that the trial court deprived Appellant of the opportunity to cross-examine Mr. Roth at an evidentiary hearing. However, there is no indication that Appellant's arguments were not fully presented to the Court. Appellant's claims in the trial court resulted in numerous hearings in which Appellant was able to present its arguments to the trial court. In addition, Appellant's claims in the trial court have been ongoing since March of 2002. During this time span, there is no indication that the trial court prevented Appellant from utilizing the civil rules of discovery to depose Mr. Roth to obtain the information they sought to support their claims. Appellant's claims remained pending in the trial court for nearly two and one-half years before a final judgment was entered. During this time, Appellant was permitted to file numerous motions, briefs, and memoranda in support of its arguments to the trial court. Accordingly, we conclude that Appellant was given an opportunity to be heard at a meaningful time and in a meaningful manner. Accordingly, Appellant's third assignment of error is overruled.
 III. {¶ 23} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Whitmore, J., Concur.