**In re Jeffrey LAVIGNE, d/b/a Laser Medical Associates of NY, Debtor.**

**MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Plaintiff–Appellant,**

v.

**Hal M. HIRSCH, as Trustee of Estate of Jeffrey E. Lavigne, d/b/a Laser Medical Associates of NY, Defendant–Appellee.**

Nos. 95 Civ. 6953 (KTD), 92 B 45593 (BRL). Adv. No. 94–8905A.

United States District Court, S.D. New York.

July 25, 1996.

---

Werner & Kennedy, New York City (Richard J. Cairns and Haroula K. Ballas, of counsel), for Appellant.

Gainsburg & Hirsch, Purchase, NY (Hal M. Hirsch, David L. Barrack and Scott Goldberg, of counsel), for Trustee Hal M. Hirsch.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Appellant, Medical Malpractice Insurance Association, ("MMIA") appeals from an order of Bankruptcy Judge Burton R. Lifland, issued June 14, 1995, which granted the cross-motion for summary judgment of Hal M. Hirsch, as Trustee of the Estate of Jeffrey E. Lavigne, d/b/a Laser Medical Associates of NY ("Trustee"). MMIA argues that the Bankruptcy Judge misapplied relevant provisions of the Bankruptcy Code in holding that the Trustee in a Chapter 7 conversion had the contractual and statutory right to exercise an option to purchase Tail Coverage for

a claims-made, medical malpractice insurance policy initially purchased by the Debtor and renewed by him to cover the period April 1, 1993 through March 31, 1994. Such Tail Coverage allows the insured to seek coverage for claims which arise during the policy period, but which are first asserted after the policy period.

■ The grant of a motion for summary judgment by the Bankruptcy Court is subject to *de novo* review by the District Court. *See Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566 (2d Cir.1991); *In re Atlantic Computer Sys.*, 154 B.R. 166 (Bankr.S.D.N.Y.1993). After considering the undisputed facts in this case, and the arguments presented on appeal, Bankruptcy Judge Lifland's decision is affirmed in all respects.

MMIA argues that the option to purchase such Tail Coverage expired both contractually and statutorily before the Trustee attempted to exercise the option on behalf of the estate. MMIA calculates the termination date as either September 28, 1993, the date upon which MMIA canceled the policy based on the Debtor's expressed intent to cancel the policy, or January 27, 1994, the date upon which the case was converted from Chapter 11 to Chapter 7. According to MMIA, under either scenario, the Trustee would have sixty days from these dates of termination to assume the policy and purchase the Tail Coverage. The latest date for the Trustee to exercise the option, therefore, would be March 28, 1994. MMIA argues that the Trustee's attempt to exercise the option to purchase Tail Coverage by letter to MMIA on May 3, 1994, was untimely and therefore MMIA refuses to accede to the Trustee's exercise of the option.

The Trustee asserts that Lavigne's cancellation of the policy was void since it constituted an extraordinary transaction by the Debtor involving the property of the estate, and therefore, required Bankruptcy Court approval. The Trustee argues that since this transaction was null and void, the insurance policy could not have been terminated on September 28, 1993, but continued through the date of conversion of the estate. Presented with the undisputed facts that imme-

diately after the attempted cancellation, Lavigne closed the last of his medical offices and attempted suicide, Bankruptcy Judge Lifland concluded that the cancellation was "part of an illogical and desperate course of action" by the Debtor. *In re Jeffrey E. Lavigne*, 183 B.R. 65, 70 (Bankr.S.D.N.Y. 1995). Based on these surrounding facts, Bankruptcy Judge Lifland held that the cancellation was an extraordinary transaction by the Debtor which required Bankruptcy Court approval. The cancellation of the insurance contract on September 28, 1993, therefore, was null and void and the insurance contract remained in force as of the date of the conversion to Chapter 7, on January 27, 1994.

■ I agree that the Debtor's attempt to cancel the insurance policy constituted an extraordinary transaction involving the property of the estate which would require court approval. Prior to the cancellation of the coverage of this policy, the Debtor had numerous malpractice claims pending against him, a number of which would appear to fall within the coverage of this Policy. Bankruptcy Judge Lifland also noted in his opinion that Lavigne's attorney at the time of his cancellation and attempted suicide, Michael Sucher, took over operation of Lavigne's business affairs without leave of court. *In re Lavigne*, 183 B.R. at 67. Given these undisputed facts, the attempted cancellation is properly considered activity outside the Debtor's ordinary course of business, and the Debtor should have sought Bankruptcy court approval of his attempted cancellation. *See In re Waterfront Cos.*, 56 B.R. 31, 35 (Bankr. D.Minn.1985) ("(s)ome transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary").

■ The parties agree that after conversion of the estate, the Trustee did not assume or reject the policy within the statutorily required period, or seek an extension of time to do so. According to Section 365(d)(1) of the Bankruptcy Code, unless the Policy is assumed upon conversion, it is automatically rejected sixty days after the conversion of the Debtor's bankruptcy case. Bankruptcy Judge Lifland applied this section to con-

clude that since no assumption was made, the Policy was rejected as a matter of law on March 28, 1994. Bankruptcy Judge Lifland then applied the sixty day option to purchase Tail Coverage under the Policy from that date, giving the Trustee until May 27, 1994 to exercise the option. The Trustee's May 3, 1994 letter attempting to exercise the option would therefore fall within the option period.

MMIA's main argument on the summary judgment motion before Bankruptcy Judge Lifland was that the statutorily deemed rejection of the policy on March 28, 1994, constituted a breach of the insurance agreement, thereby relieving MMIA of all of its obligations under the contract.

■ I agree that the right to the Tail Coverage option was not extinguished upon the deemed rejection of the Policy. The rejection of an executory contract in bankruptcy does not dissolve all the terms of the contract, but enables the non-breaching party to seek damages for the breach. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687 (Bankr.S.D.N.Y.1992).

The only issue remaining is the date upon which the rejection is deemed to have occurred, and the time in which the Trustee had to exercise the option. On appeal, MMIA adopts the tortured argument that the court should have applied the retroactive provisions of Section 365(g) of the Code to determine the date of termination, and therefore, the date the option expired. *See* 11 U.S.C. § 365(g). According to MMIA, under section 365(g), the date of termination of a breached executory contract in bankruptcy relates back to the date immediately preceding petition. Therefore, according to MMIA, the date of termination of the contract should be set either at the date immediately before the Debtor entered Chapter 11, October 7, 1992, or the date immediately before conversion of the case to a Chapter 7 bankruptcy, January 26, 1994. The Trustee's May 3, 1994 letter would be untimely under either of these proposed termination dates.

■ The Trustee argues that Section 365(g) is solely a claims allowance provision that provides the means for determining the priority of a creditor's claim for the debtor's

rejection of an executory contract, and whether that claim will be treated as a pre-petition unsecured claim or a post-petition administrative claim. Under Section 365(g), where an executory contract is not assumed upon conversion, the date of breach is set as the date immediately prior to filing by the debtor, thereby allowing a creditor to assume its appropriate priority for its claim for breach against the debtor. The Trustee argues that the provisions of Section 365(g) are inapplicable because the rights and obligations at issue are not a subject of possible remedies available to a non-breaching party. The Trustee also argues that MMIA's application of Section 365(g) would lead to the absurd result of setting the option deadline as December 7, 1992, more than a year prior to the Trustee's appointment, or March 27, 1994 one day prior to the policy being rejected pursuant to the operation of the Code.

I agree with the Trustee that the relation back provisions of Section 365(g) are inapplicable to this situation. Most significantly, MMIA's argument lacks consideration of the purpose of the statutorily required Tail Coverage option. Under New York Insurance Law and Regulations, MMIA is required to provide a sixty-day option to purchase Tail Coverage for certain medical malpractice policies. *See* New York Insurance Law § 5504(f)(1); Regulation 121, Section 73.3. The Policy at issue here was one such policy. MMIA's proposed Section 365(g) construction would eliminate the Tail Coverage option solely as a function of the operation of the bankruptcy laws. Under MMIA's argument, the option would have expired either on December 7, 1992 nearly sixteen months prior to the deemed rejection of the policy, or March 27, 1994, one day prior to the deemed rejection date. Therefore, the Trustee would never have had the opportunity to exercise the option after the deemed rejection. Such a result cannot be the intended effect of applying the Bankruptcy Code to the statutorily required Tail Coverage provision of the contract involved in this bankruptcy.

I therefore agree with Bankruptcy Judge Lifland that the proper date of termination for the purposes of exercising the Tail Coverage option was the deemed rejection date,

March 28, 1994, and that the Trustee had until May 27, 1994, sixty days from the deemed rejected date, to exercise the Tail Coverage option. The Trustee's May 3, 1994 letter, therefore, was a timely exercise of the Tail Coverage option.

MMIA's last argument, that the Trustee failed to exercise the Tail Coverage option since the May 3, 1994 letter did not include tender of the premium for the Tail Coverage is equally unavailing. The Trustee's May 3, 1994 letter gave MMIA notice that the Trustee intended to exercise the option and specifically requested the documents needed to finalize that election. The Trustee must have expected such documents to include a bill or a payment schedule for the Tail Coverage option and that such a bill would be received in sufficient time for the Trustee to tender payment before the option ran out. No such bill was received by the Trustee, but rather the parties entered into a Tolling Agreement before the option period expired on May 27, 1994, which tolled the time for the Trustee to tender payment. MMIA then unilaterally revoked the Tolling Agreement on September 29, 1994, one day before instituting this declaratory judgment action. MMIA's refusal to accept the Trustee's exercise of the option to purchase Tail Coverage relieves the Trustee of the obligation to tender payment to MMIA before a certain date.

For all of the foregoing reasons, I affirm Bankruptcy Judge Lifland's decision in all respects.

SO ORDERED.