**In re WEISSER EYECARE, Inc.**

**Bankruptcy No. 88–B–15781.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 6, 2000.

Gregory A. Stayart, Lindenhurst, IL, Robert Tepper, Chicago, IL, for Plaintiff.

Elliot R. Schiff, Craig W. Church, O'Connor, Schiff & Myers, Chicago, IL, for Defendant.

Roman Sukely, Office of the U.S. Trustee, Chicago, IL.

Allan J. DeMars, Spiegel & DeMars, Glenn Heyman, Dannen Crane Heyman & Simon, Chicago, IL, trustees.

## *MEMORANDUM OPINION*

JACK B. SCHMETTERER,
Bankruptcy Judge.

The contested issue discussed here relates to the Debtor's bankruptcy case now pending under Chapter 7 of the Bankruptcy Code.

This dispute arises from a 1990 agreement entered into by the former Chapter 7 trustee Jay Weisman ("Weisman") to litigate jointly "lender-liability" claims held by Debtor Weisser Eyecare, Inc. ("Weisser" or "Debtor") and Debtor's former principal shareholder and president Phillip Hirsch ("Hirsch") against NBD–Highland Park. Hirsch has now sought leave here to sue the former Chapter 7 trustee Weisman for asserted breach of that agreement between Weisman, as trustee, and Hirsch under which the parties allegedly agreed to split equally the proceeds of any recovery. To demonstrate the exact nature of his proposed state court suit, Hirsch's counsel was required to file a proposed draft complaint, and that was done. His counsel and the proposed draft complaint made clear that recovery is sought from Weisser's personal assets, not from the bankruptcy estate. Under authority discussed below, permission of this court is required before a Chapter 7 trustee or

former trustee can be sued for acts arising out of the trustee's duties. For reasons discussed here, Weisman cannot be held personally liable under the asserted draft complaint, and therefore the motion by Hirsch for leave to sue him is denied.

## BACKGROUND

There are no fact issues.

On December 30, 1989, Debtor filed its petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. On June 1, 1989, the case was converted into one under Chapter 7 of the Code. On June 1, 1989, Jay Weisman was appointed as the original Chapter 7 trustee for the Weisser bankruptcy estate. Among the assets of that estate were lender liability claims against NBD, relating to various loan agreements. Hirsch also personally held claims against NBD, based on both his personal guarantees of several loans and on additional loans which he acquired in his own name.

In July of 1990, Hirsch and Weisman, the latter in his capacity as trustee, agreed to litigate jointly their claims against NBD, using Mr. Hirsch's attorney, Mr. Marty J. Schwartz, to pursue both claims. Thereafter, Weisman prepared an application to retain Schwartz as special counsel to pursue the estate's claims. Giving proper notice to creditors of the bankruptcy estate, Weisman asked the bankruptcy judge then assigned for permission to retain Schwartz to do that work. However, neither the application filed nor the related notice to creditors reflected the agreement assertedly entered into between Hirsch and Weisman regarding equal division of any net recovery from the joint suit. Weisman's attorney brought the application to employ before Bankruptcy Judge John Squires on July 25, 1990, and afterwards tendered a draft order to Judge Squires which was entered. While relevant terms of the asserted agreement between Hirsch and Weisman regarding sharing of costs and net recovery were discussed in open court before Judge Squires (*See* Movant's Exhibit B, Trial Transcript, p. 3), no notice of such provisions had been provided to creditors of the estate prior to, or even after the hearing. The agreement between Hirsch and Weisman to have common representation and to share costs and profits equally was later reduced to writing, but was not incorporated into the order signed by Judge Squires. Also, as earlier indicated, the creditors were given no notice of that agreement.

Some time in March or April of 1992, Weisman's service as trustee for the Weisser estate ended, and he was replaced as trustee by Mr. Allan J. DeMars. Hirsch alleges that two years later, in March, 1994, he first learned that the order signed by Judge Squires did not reflect the agreement between himself and Weisman for division of recovery. On March 29, 1994, Hirsch unsuccessfully petitioned Judge Squires to amend his earlier order so as to include the terms of the written contract between the parties and thereby enable Hirsch to recover 50% of any net recovery from the litigation.

In subsequent litigation against NBD, most expenses of the lawsuit were borne by Hirsch. After many years of litigation, on March 27, 1998, both claims against NBD were settled after notice to Hirsch and creditors of the bankruptcy estate, although Hirsch now claims that the settlement was against his wishes and in violation of the agreement with Weisser. Hirsch's claims against NBD were then settled for $250,000 and the Weisser estate claims were settled for $950,000.

Subsequently, on July 23, 1999, Hirsch filed this present motion for leave to sue former trustee Jay Weisman for breach of his contract with former trustee Weisman, asserting that he should have received half of the combined net proceeds of the two settlement amounts. As earlier stated, he seeks asserted damages from Weisman personally, not from the bankruptcy estate.

## APPLICABLE STANDARDS

 Under the *Barton* doctrine [1], as applied by recent Seventh Circuit authority to bankruptcy matters, a party must seek leave of the bankruptcy court to file suit against a bankruptcy trustee. *In re Linton*, 136 F.3d 544, 545 (7th Cir.1998). Before leave to sue a trustee may be obtained, the claimant must be able to plead the elements of a prima facie case against the trustee. *In re Berry Publishing Services, Inc.*, 231 B.R. 676 (Bankr.N.D.Ill. 1999) *citing In re Kashani*, 190 B.R. 875 (9th Cir. BAP 1995), but as discussed below the movant has failed to do that.

 A trustee "cannot be held personally liable unless he acted outside the scope of his authority as trustee, i.e. *ultra vires,* or breached a fiduciary duty that he owed as the trustee to some claimant." *State of Ill., Dept. of Revenue v. Schechter,* 195 B.R. 380, 384 (N.D.Ill.1996).

 Under § 541 of the Bankruptcy Code,[2] "property of the estate" includes, (except as provided in §§ 541(b) and (c)(2)), "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. This includes "all interests, such as ... tangible and intangible property, chooses in action ... [and] causes of action ... whether or not transferable by the debtor." *Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487 (3rd Cir.1997) *citing* 1978 U.S.C.C.A.N. at 6136.

 Duties of a Chapter 7 trustee with respect to property of the estate are set forth in § 704. The primary duty of a bankruptcy trustee is to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704. The procedure by which the bankruptcy trustee may carry out this objective is set forth in § 363 which authorizes the trustee to sell property of the estate in the "ordinary course of business." However, in order to use, sell or lease property of the estate other than in the ordinary course of business, the trustee must provide notice to parties in interest, and there must be a hearing if such parties in interest object. 11 U.S.C. § 363(b)(1). Hirsch contends that his agreement with Weisman to split net proceeds of litigation was such a use or sale of bankruptcy estate property not in ordinary course, and therefore Weisman as the contacting trustee was required to send notice of that agreement to the creditors but failed to do so.

## DISCUSSION

 Hirsch has moved for leave to sue former trustee Jay Weisman in a non-bankruptcy court. Because trustees serve an important function as officers of the court, they enjoy limited personal immunity when operating pursuant to their authority and enjoy absolute immunity if operating pursuant to a court order. *See Boullion v. McClanahan,* 639 F.2d 213 (5th Cir.1981). This immunity applies in all cases except when the trustee acts outside of his or her proper authority. *Ziegler v. Pitney,* 139 F.2d 595 (2nd Cir.1943). Parties may generally recover for acts of trustees within their official capacity such as for tort committed by or on behalf of the trustee, or for breach by the trustee of a contract entered into on behalf of the bankruptcy estate. However, any recovery from such claims will be obtained from the estate and not from the trustee personally. The reason for imposition of limited immunity and the leave-to-sue requirement for personal suits against the trustee is that, otherwise, "trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premi-

---

1. The doctrine set forth in *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881), requires a party to obtain permission of the appointing court before bringing suit against a receiver.

2. Unless otherwise indicated, references to Rules are to the Federal Rules of Bankruptcy Procedure and all statutory references are to Title 11 of the United States Code.

ums and this will make the administration of the bankruptcy laws more expensive." *In re Linton,* 136 F.3d at 545.

Further, the leave-to-sue requirement protects trustees from undue interference in the execution of their duties resulting from need to defend themselves in lawsuits. While this is not a concern in the present case because Weisman is no longer the trustee, the other justifications for the leave-to-sue requirement and imposition of limited immunity are still applicable.

Among the Federal Circuit Courts of Appeal, there is some disagreement as to the proper standard applicable to determine the proper scope of a trustee's limited immunity, but a panel of the Seventh Circuit has held that a trustee may be "personally liable only for a willful and deliberate violation of his fiduciary duties." *In re Chicago Pacific Corp.,* 773 F.2d 909, 915 (7th Cir.1985) *citing Mosser v. Darrow,* 341 U.S. 267, 272, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

.To determine whether any fiduciary duties of former trustee Weisman are implicated by the proposed draft complaint, it is first necessary to clarify the status which Hirsch formerly held and now holds and the capacity in which he presently seeks relief. Hirsch was officer and principal shareholder of the Debtor, and he also held an unsecured claim against the bankruptcy estate in the amount of about $439,000. However, none of those interests was involved in or advanced by the arrangement regarding joint litigation of the two claims against NBD that included an agreement to split any net proceeds. That agreement advanced his individual claim against NBD to fix and maximize his personal recovery from the joint suit. But, Hirsch did not assert his capacity as officer, stockholder, or claimant against the estate as a basis for the purported sharing agreement or for his present motion, or as basis for the proposed lawsuit.

The remedy which Mr. Hirsch seeks is not repayment of his expenses or costs of his credit expended. Rather, he seeks recovery of his contractual expectancy based on asserted contractual rights under an agreement into which Mr. Hirsch entered with Mr. Weisman in the latter's capacity as Chapter 7 trustee. Hirsch asserts his present motion simply as party to that agreement, and not as a creditor, stockholder or beneficiary of the estate. Therefore, for purposes of this dispute, no possible fiduciary relationship of the former Chapter 7 trustee to estate creditors or stockholders (assuming arguendo that one existed) is pertinent. Thus, Weisman owed no duty of care or loyalty to Hirsch that relates to the proposed suit, a conclusion which Hirsch does not contest (Reply Memorandum, p. 11). Absent such a duty, Hirsch may only recover from Weisman for *ultra vires* acts beyond the scope of Weisman's authority. *Schechter,* 195 B.R. at 384.

The proper authority of a bankruptcy trustee under Chapter 7 is defined by his duties and responsibilities under the Bankruptcy Code. That trustee's primary duty is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest" 11 U.S.C. § 704. As mentioned above, the causes of action held by Weisser and asserted by Weisman as trustee against NBD qualified as property of the estate under § 541 of the Bankruptcy Code. Therefore, it was within Weisman's authority under § 704 to collect on that cause of action. If an asset of the estate is a legal cause of action, this may be accomplished either by the sale or assignment of the claim by law, or by pursuit and litigation of the claim as was done here.

While a trustee's primary duties are set forth in § 704, a trustee is guided in the carrying out of such duties by provisions of § 363 of the Code. Section 363 governs the procedure by which a

trustee reduces to money property of the estate for which he or she serves. While § 363(c) allows a trustee to use, sell or lease property of the estate in the ordinary course of business, the use, sale or lease of estate property outside of the ordinary course of business is governed by § 363(b) and requires additional steps to be taken. Section 363(b)(1) requires that a trustee may sell or lease property of the estate outside of the ordinary course of business only after proper notice and opportunity for a hearing. That provision generally prevents extraordinary transactions which might harm the positions of unsecured creditors in the absence of notice, an opportunity to object and the availability of a hearing. Here, the agreement to litigate jointly the separate causes of action and to share proceeds equally was not entered into in the ordinary course of business. Because the agreement between Hirsch and Weisman gave Hirsch a right to collect a portion of any joint recovery on the Weisser–Hirsch cause of action, that agreement constituted an attempted sale or transfer of property of the estate outside of the ordinary course of business and was therefore subject to the notice provisions of § 363(b).

▮▮▮▮ Because the bankruptcy system is premised on Constitutional Due Process principles requiring notice and opportunity to be heard, a bankruptcy trustee must give "notice reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Chicago Art Glass, Inc.*, 155 B.R. 180, 186 (Bankr. N.D.Ill.1993), *citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). A trustee's authority to sell property of the estate outside the ordinary course of business is thus confined to those instances in which such notice has been given. The usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence

to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void. *In re Lavigne*, 183 B.R. 65, 70–71 (Bankr.S.D.N.Y.1995), *affirmed*, 199 B.R. 88 (S.D.N.Y.1996), *affirmed*, 114 F.3d 379 (2nd Cir.1997) (Chapter 11 Debtor-in-possession's attempt to cancel an insurance policy which constituted property of the estate, without notice to interested parties was null and void as a violation of the notice provisions of § 363(b)(1)); *M.R.R. Traders, Inc. v. Cave Atlantique*, 788 F.2d 816 (1st Cir.1986); *See also Esposito v. Title Insurance Co. (In re Fernwood Markets)* 73 B.R. 616 (Bankr.E.D.Pa.1987) (court found sale in violation of notice provisions of § 363(b)(1) to be voidable at option of the creditor.) Some courts have suggested a "balancing test" to see if the estate has been benefited by the transaction in dispute in order to determine if the transfer should be rendered invalid for failure to adhere to notice requirements of § 363(b)(1), *See e.g. In re Cavalieri*, 142 B.R. 710, 716 (Bankr. E.D.Pa.1992). However, to allow such transactions to stand over objection of creditors who were denied proper notice, even when there has been some benefit to the estate, would subvert the requirements of § 363(b) and encourage transfers to be completed without adherence to the requirements of that section.

As stated above, it is undisputed that the asserted agreement to split proceeds was an attempt to sell or transfer a portion of the property of Debtor's estate outside the ordinary course of business. If the facts pleaded in the proposed draft Complaint be assumed true for purpose of considering the instant motion, then Weisman clearly attempted in his official position to enter into the sharing agreement. His failure to give proper notice to creditors operated to deprive that agreement of validity and enforceability. Therefore, the purported agreement between Weisman as trustee and Hirsch could be found null and void, and on that reasoning no valid contract existed which required equal sharing of net recovery from settlement of the

litigation. It would follow that Hirsch may not sue either the current trustee or Weisman on the voided contract. *Clark v. Village of Olympia Fields*, 1991 WL 264656 at *4–5, 1992 U.S. Dist. LEXIS 13588, 7–9 (N.D.Ill.1992). (Contract for employment of municipal police chief beyond period for which appropriations had been provided, in violation of Illinois Municipal Code was void ad initio and therefore summary judgment for defendant on breach of contract cause of action was proper). So if Hirsch had sued the present trustee for breach of the contract to divide suit proceeds and sought recovery from the estate, a defense could have been asserted by the present trustee based on lack of notice to creditors, and therefore lack of valid agreement binding the estate. It is presumably for that reason that Hirsch has not sought to recover from the estate.

Hirsch alleges substantial injury in this matter, claiming actual damages of at least $150,000 and ultimately seeking damages in excess of several million dollars. However, assuming *arguendo* that the sharing agreement were enforceable, any possible injury to Hirsch resulted from breach by the current bankruptcy trustee of the sharing agreement, not from Weisman's failure many years ago to give proper notice under § 363(b) to all creditors when seeking approval of counsel. That notice was required for benefit of creditors before they or the estate could be bound by the agreement. To be protected by an enforceable agreement, Hirsch's counsel at the time should have made sure that notice of it went out to creditors. But Weisman's omission to give such notice was not breach of any duty that he as trustee owed to Hirsch.

■ While Weisman failed to meet fully the notice requirements of § 363(b)(1), this did not render his actions *ultra vires*. Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions. *In re Markos Gurnee Partnership*, 182 B.R. 211; *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir.1967) *cert. denied*, 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968). Weisman was simply attempting to convert an estate claim into money, as he was required to do under § 704. Pursuant to § 704, Weisman had the ultimate authority to sell any and all property of the estate. In attempting to act pursuant to this authority, Weisman arguably failed to meet the statutory procedural requirements for one aspect of his action (notice to creditors of his sharing agreement), but it cannot be said that such a failure rendered his actions *ultra vires*.

To illustrate the nature of *ultra vires*, it was held in *In re Markos Gurnee Partnership* that a trustee's failure to pay state taxes due was a failure within his authority and not an *ultra vires* act or omission. *In re Markos Gurnee Partnership*, at 224–228. The opinion pointed out that "just as the trustee's conduct does not become ultra vires because it is negligent, so it does not become ultra vires because it violates an obligation imposed by state law". *Id.* at 224. *See also Schechter*, 195 B.R. 380 (N.D.Ill.1996). Weisman's failure to give notice to creditors thus did not constitute an *ultra vires* action.

■ Also, because Weisman was not the trustee at time of the settlement, he cannot be seen to have taken an *ultra vires* action in failing to pay out half the settlement proceeds. Indeed, had the estate split the net recovery equally with Hirsch, there would be a serious question whether a creditor harmed by this might have been able to sue Weisman for breach of fiduciary duty to that creditor for failure to give notice of the sharing agreement and also sue the current trustee for honoring an invalid agreement. However, Hirsch is not in a position to assert either such claim.

Finding Weisman's failure to adhere to the § 363 notice requirements when he

obtained approval of counsel to constitute an *ultra vires* act would extend the *ultra vires* concept far beyond its proper meaning. It would also undermine the policy of protecting trustees from personal liability for claims arising from the execution of their duties, and would discourage individuals willing to serve as trustee, for fear that any failure to adhere to all statutory or rule requirements would render them personally liable.

### CONCLUSION

For the reasons stated, Hirsch's motion for leave to sue former trustee Jay Weisman will by separate order be denied.