[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11356

Non-Argument Calendar

_____

ANNA JURAVIN,

Plaintiff-Appellant,

DON KARL JURAVIN, et al.,

Plaintiffs,

*versus*

FLORIDA BANKRUPTCY TRUSTEE,
JAMES RYAN,
Esq.,
BRADLEY SAXTON,
Esq.,
LAUREN REYNOLDS,
Esq.,

DENNIS KENNEDY,

Trustee,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:21-cv-00514-GAP-PRL

————————————

Before ROSENBAUM, ABUDU, and TJOFLAT, Circuit Judges.

PER CURIAM:

This appeal arises out of Don Juravin's bankruptcy proceeding. Because Don[1] failed to adhere to the Bankruptcy Code's requirement that debtors disclose relevant information about their estate's assets, the bankruptcy court entered a Break Order. That Order allowed the bankruptcy trustee, his counsel, and the United States Marshals Service to enter the Juravins' residence to collect or photograph information and assets related to Don's estate.

Plaintiff-Appellant Anna Juravin, Don's wife, asserts that Defendants-Appellees Dennis Kennedy (the bankruptcy trustee),

---

[1] We refer to both Don and Anna Juravin in this opinion. So for clarity, when we speak of only one of them, we use their first name.

James Ryan, Bradley Saxton, and Lauren Reynolds (Kennedy's counsel) improperly seized personal documents and effects unrelated to Don's estate when they executed the Break Order. So with assistance of counsel, she filed this lawsuit against Defendants in the district court.[2]

The district court dismissed the complaint for lack of subject-matter jurisdiction under the *Barton* doctrine. That doctrine generally prevents putative plaintiffs, without the bankruptcy court's leave, from filing suit against bankruptcy trustees or other court-authorized officers for actions taken in their official capacity. *See Barton v. Barbour*, 104 U.S. 126, 129 (1881). We affirm but do so for a different reason. We hold that the district court has subject-matter jurisdiction over Anna's lawsuit because she adequately alleges the *Barton* doctrine's *ultra vires* exception. Still, Anna's suit fails because Defendants enjoy judicial immunity for actions they took within the scope of their court-authorized positions.

---

[2] Both Don and Anna filed the complaint on behalf of themselves, their children, and United Medical Group International, Inc. (a company affiliated with Anna). But three weeks after Don and Anna filed the complaint, Don voluntarily withdrew from the case in his individual capacity. Anna, her children, and United Medical Group are the remaining plaintiffs in this action. So for clarity, when we refer to Anna's claims in the district court, we refer to her claims as well as those of her children and United Medical Group.

## I.    BACKGROUND

In 2015, the Federal Trade Commission ("FTC") initiated proceedings against Don and several of his companies. The FTC alleged that Don and his companies violated federal consumer-protection laws through practices they employed in the marketing and selling of certain weight-loss products. In October 2018, Don filed a petition for voluntary Chapter 7 bankruptcy, listing the FTC as a creditor. And a couple of months later, the district court for the Middle District of Florida entered judgment jointly and severally against Don and his companies, ordering payment of $25,246,000 to the FTC and permanently enjoining Don and his companies from engaging in certain deceptive or unfair trade practices.

About three years after Don filed his petition for bankruptcy, Dennis Kennedy, the bankruptcy trustee, moved for a Break Order to search Don's home and seize or photograph documents and assets that relate to his bankruptcy case. He requested this relief because Don failed to voluntarily disclose financial information relevant to his estate. The bankruptcy court granted that motion. Specifically, it allowed Kennedy to seize or photograph (1) all business records belonging to Don's companies; (2) all electronic communication devices on the premises containing information about Don, his business interests, and property of the bankruptcy estate; (3) Don's wristwatch collection; and (4) "[a]ny additional items Trustee, in his sole discretion, reasonably believes to be part of the bankruptcy estate."

22-11356                Opinion of the Court                5

On May 5, 2021, Kennedy, his attorneys (Ryan, Saxton, and Reynolds), and the United States Marshals Service executed the Break Order.  Anna and their two children were home at the time. Kennedy seized numerous electronics, including Apple computers, iPads, and cellphones, Don's wristwatch collection, and several boxes of documents from across the house.

In October 2021, Don and Anna effected two filings.  They first jointly moved to remove Kennedy from his position as trustee and to disqualify his counsel from the bankruptcy case.[3]  In support of their motion, they argued Kennedy and his counsel had exceeded the scope of the Break Order by seizing numerous personal items unrelated to Don's estate, such as family medical records.

And a day later, on behalf of themselves, their children, and United Medical Group International, Inc. (a company affiliated with Anna), Don and Anna filed the present complaint in the district court.  Don, however, voluntarily withdrew from the action about three weeks after he and Anna instituted it.[4]  *See supra* note 2.  The complaint names as defendants Kennedy and his attorneys, Ryan, Reynolds, and Saxton.  It also seeks redress for Defendants' seizure of personal documents and effects unrelated to Don's

---

[3] For clarity, when we refer to the Juravins' motion, we refer to Don and Anna's motion in the bankruptcy court to remove Kennedy and his counsel from the bankruptcy case.

[4] As a reminder, we refer to this lawsuit in the district court as Anna's claims or Anna's lawsuit.  But her children and United Medical Group are named plaintiffs as well.

bankruptcy. The complaint's factual allegations are almost identical to those outlined in the body of the first motion the Juravins filed in the bankruptcy court. And it alleges that Defendants' execution of the Break Order (1) violated Anna's Fourth Amendment rights secured by the U.S. Constitution; (2) violated her right to privacy as secured by Florida's Constitution; and (3) constituted the common-law tort of conversion.

We briefly recount the procedural history for both filings.

### A. The bankruptcy court denied on the merits the Juravins' motion to remove Kennedy and his counsel.

After the Juravins filed in the bankruptcy court their motion to remove Kennedy, the bankruptcy court held a hearing to adjudicate the Juravins' motion. The Juravins recounted the arguments they had made in their motion. Mainly, they asserted that Kennedy had improperly seized personal items, including family medical records and attorney-client privileged materials, and that too much time had passed for Kennedy to claim he was still reviewing the seized documents. They complained that though Kennedy had already logged the inventory of the items he seized from the Juravins' residence, that inventory did not specifically list the privileged materials, the Juravins' medical records, or other seized personal effects.

In response, Kennedy and his counsel first noted that the Juravins failed to approach them about any allegedly impermissibly retained personal items. Instead, Kennedy complained, the Juravins skipped straight to motions practice and a lawsuit. And as to

the merits, Kennedy argued that he executed the Break Order reasonably. He said that the documents at the Juravins' residence were voluminous, disorganized, and required substantial effort to review. For instance, Kennedy noted that, in a set of documents, "the first page would be a bank record and the next page would be a children's drawing and the page after that would be another bank record." Not only that, but Kennedy and his counsel were concerned about overtaxing the Marshals who accompanied them when they were executing the Break Order at the Juravins' home. So Kennedy gathered documents in batches, permitting Anna to conduct a cursory review of those batches and to withhold any private documents she identified. Kennedy acknowledged that he does not have an interest in Anna's personal information but affirmed that he, his attorneys, and the Marshals attempted to collect only financial information relevant to Don's bankruptcy.

The bankruptcy court denied the Juravins' motion to remove Kennedy and his counsel. The court stressed that the Break Order was a necessary response to Don's failure to comply with his responsibilities under the Bankruptcy Code, which he invoked through a voluntary Chapter 7 petition. As to the execution of the Break Order, the bankruptcy court ruled that Kennedy and his agents acted "within [h]is realm," and it explained that Kennedy was "doing exactly what the [C]ode requires him to do when a debtor fails to cooperate and voluntarily supply the information requested." As to any personal effects Defendants accidentally seized, the bankruptcy court permitted the Juravins to request their return. Ultimately, the bankruptcy court stressed that the Juravins'

motion "smell[ed] of bad faith," and it warned the Juravins that further attempts to interfere with the trustee's orderly administration of the estate risked sanctions.

Anna independently appealed the bankruptcy court's decision.[5] The district court dismissed the appeal because it concluded it lacked subject-matter jurisdiction. The district court held that Anna failed to plead an injury in fact because she could not show a sufficient financial stake in the bankruptcy court's order. In other words, Anna was not an aggrieved appellant because she is neither "a debtor" nor "a creditor or any other party with a financial interest in the handling of the bankruptcy and disposition of the bankruptcy estate." Plus, as to any property Kennedy seized under the Break Order, the district court found the issue moot because Kennedy appeared to have returned all relevant personal items and because Anna had not identified any additional property that Kennedy failed to return.

### B. The district court dismissed Anna's complaint for lack of subject-matter jurisdiction.

After the district court dismissed the appeal of the motion to remove Kennedy and his counsel, Don, purporting to act on behalf of himself and Code2GOD, a non-profit organization, filed a *pro se* motion requesting leave from the bankruptcy court to file a

---

[5] Note that this is a separate district-court proceeding, not the present one in which Anna filed her complaint and from which she now appears before us on appeal. Don did not join this appeal of the motion to remove Kennedy and disqualify his counsel from the bankruptcy case.

civil complaint against Kennedy for the alleged wrongdoings committed in executing the Break Order.  The bankruptcy court denied the motion.  It explained that Don, as someone already represented by counsel, could not file a *pro se* motion, and Code2GOD, as an entity, could proceed only through counsel, not *pro se*.

Neither Anna nor Don again requested leave from the bankruptcy court to file a complaint in the district court against Defendants.  Still, Anna maintained the present action seeking redress for Kennedy's seizures under the Break Order and his alleged Fourth Amendment, Florida constitution, and conversion violations.  Recall, Anna had filed the present suit about a year before Don requested leave from the bankruptcy court.

Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim.  The district court granted that motion.  It concluded that the case was related to Don's bankruptcy proceeding and that Defendants acted within the scope of the bankruptcy court's express authorization when they executed the Break Order.  As a result, the court held the *Barton* doctrine precluded jurisdiction over the lawsuit.  And it also concluded that the complaint was the type of bad-faith attempt to disrupt bankruptcy proceedings that the *Barton* doctrine is supposed to prevent.  In the district court's view, the complaint launched a clear collateral attack on the bankruptcy court's Break Order.

10                    Opinion of the Court                  22-11356

Anna and her children timely appealed.[6]   United Medical Group did not appeal.  On appeal, Anna proceeds *pro se*.

## II.    STANDARD OF REVIEW

There are two types of motions to dismiss for subject-matter jurisdiction: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  In a facial attack on subject-matter jurisdiction, a defendant argues that the plaintiff's complaint fails to allege a sufficient basis for subject-matter jurisdiction. *Id.* at 1529.  So the district court must take as true the complaint's allegations in evaluating its subject-matter jurisdiction. *Id.* In contrast, factual attacks challenge the existence of subject-matter jurisdiction "in fact, irrespective of the pleadings." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980)).  District courts may thus consider evidence extrinsic to the pleadings, such as administrative or other court records. *See Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1022–23 (11th Cir. 2021).  Here, the district court considered Defendants' motion to dismiss for lack of subject-matter jurisdiction as a factual attack on the court's jurisdiction.  So we "review the district court's legal conclusions *de novo* and any jurisdictional factual findings for clear error." *Id.* at 1023.

But when evaluating Defendants' arguments to dismiss Anna's complaint for failure to state a claim (as relevant here,

_____

[6] When we refer to Anna, we continue to refer to arguments or claims of her and her children.

22-11356                 Opinion of the Court                 11

judicial immunity),[7] we draw all reasonable factual inferences in her favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We may also take judicial notice of facts in our "own records and the records of inferior courts." *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).[8] And we may do so without converting a motion to dismiss into one for summary judgment. *Bankers Ins. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998).

## III.   DISCUSSION

On appeal, Anna contends the *Barton* doctrine does not apply to her claim that Defendants improperly seized property unrelated to the bankruptcy estate. We agree. But that does not alter

---

[7] Although defendants generally may not raise affirmative defenses in their motions to dismiss, *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd and reinstated on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc), here, Defendants properly raised their judicial-immunity defense in their motion to dismiss because the "defense is an obvious bar given the allegations," *Sibley v. Lando*, 437 F.3d 1067, 1070 n.2 (11th Cir. 2005) (per curiam).

[8] The district court took judicial notice of Don's bankruptcy-court proceedings. The parties agreed that the district court may take judicial notice of, among other dockets, records, and transcripts, the final judgment in Don's FTC matter, the briefings and arguments related to the Juravins' motion to remove Kennedy and his attorneys from their positions in the bankruptcy proceeding, and the bankruptcy court's order denying the Juravins' motion. We also granted Defendants' motion to take judicial notice of the relevant filings from Don's bankruptcy proceeding, including the appeal to the district court of the bankruptcy court's order denying the Juravins' motion to remove Kennedy and his attorneys.

the disposition of her complaint. Defendants are entitled to judicial immunity because they acted within the scope of their authority as court-authorized officers.

The *Barton* doctrine requires that "a debtor . . . obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000); *see Barton*, 104 U.S. at 128 ("It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained."). The doctrine follows from the bankruptcy court's *in rem* jurisdiction over the debtor's estate. Because one who "first exercises jurisdiction over certain property may exclude others from exercising jurisdiction over it," we require a plaintiff to ask the bankruptcy court whether it will exercise its jurisdiction in cases that are both within its jurisdiction and against its officers for their official actions. *Chua v. Ekonomou*, 1 F.4th 948, 954 (11th Cir. 2021).

There is little dispute here that the *Barton* doctrine presumptively applies to Defendants.

First, Kennedy and his attorneys are court-appointed or court-approved officers. *See Carter*, 220 F.3d at 1252 n.4 ("[C]ourt approved officers function[] as the equivalent of court appointed officers for purposes of the *Barton* doctrine."). The Court appointed Kennedy as trustee on November 1, 2018. And the Court approved Kennedy's applications to employ James Ryan, Bradley

Saxton, and Lauren Reynolds. So all Defendants are court-approved officers within the scope of *Barton*'s protections. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (extending the *Barton* doctrine to the bankruptcy trustee's attorneys).

Second, Anna challenges "acts done in" Defendants' "official capacity." *Carter*, 220 F.3d at 1252. Defendants "ostensibly undertook the challenged actions in [their] official capacity and for the purpose of enforcing the bankruptcy court's [Break] Order." *Goldberg*, 573 F.3d at 1270. Trustees have the duty to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). So Kennedy moved for a Break Order because Don did not produce the information about his "financial conditions" necessary "to administer" the bankruptcy estate. The bankruptcy court partially granted Kennedy's motion, ordering him "to obtain access and to retrieve property of the Debtor and of this bankruptcy estate," including "any . . . items Trustee, in his sole discretion, reasonably believes to be a part of the bankruptcy estate." So even if Anna complains that Defendants exceeded the scope of the Break Order or otherwise "abused" their official positions, the complaint still concerns actions "taken in their official capacities." *Goldberg*, 573 F.3d at 1270. Anna's complaint therefore falls within the *Barton* doctrine's scope.

Third, the action falls within the bankruptcy court's jurisdiction because it is "related to" the bankruptcy proceeding in which Defendants serve as court-appointed officers. *See Goldberg*, 573 F.3d at 1270; *Tufts v. Hay*, 977 F.3d 1204, 1209 (11th Cir. 2020). The "test

for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Goldberg*, 573 F.3d at 1270 (quoting *Miller v. Kemira, Inc.* (*In re Lemco Gypsum, Inc.*), 910 F.2d 784, 788 (11th Cir. 1990)). Because the "essence of" Anna's complaint is that Defendants "unlawfully attempted to bring assets into the bankruptcy estate" under the court's Break Order, the "outcome of [the] civil suit clearly could have an effect on the handling and administration of his bankruptcy estate." *Id.* at 1271. As the bankruptcy court found, Anna filed her motion to remove Kennedy and his attorneys "to stop the Trustee from continuing his efforts to investigate the Debtor's financial assets and to try to impose barriers to . . . prevent the disclosure of the assets to be recovered . . . ." As a result, the bankruptcy court had jurisdiction over Anna's claim.

Based on these three conclusions, the *Barton* doctrine applies, and, presumptively, Anna may file suit in the district court only with the bankruptcy court's leave. Yet Anna did not receive permission from the bankruptcy court. Although Don requested leave to file suit against Defendants, he never received permission to do so. And Anna never followed up. So Anna did not satisfy *Barton*'s threshold requirement. *Tufts*, 977 F.3d at 1208; *Barton*, 104 U.S. at 128.

As a result, the district court may not exercise jurisdiction over Anna's complaint unless an exception to the *Barton* doctrine

applies.  And that is what Anna argues.  Specifically, she contends the *ultra vires* exception to the *Barton* doctrine applies.

The *Barton* doctrine's *ultra vires* exception applies "if, by mistake or wrongfully, the receiver takes possession of property belonging to another."  *Barton*, 104 U.S. at 134.  "The classic application of the 'ultra vires' exception is the case of an action against a receiver who seizes or otherwise attempts to administer property that is not receivership property, but that actually belongs to a third party."  *In re DMW Marine, LLC*, 509 B.R. 497, 506 (Bankr. E.D. Pa. 2014); *see also In re Weisser Eyecare, Inc.*, 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000) ("Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions.").

Anna alleges exactly that.  She claims Defendants seized many personal items unrelated to Don's estate.  So the *Barton* doctrine does not apply to her present suit.  Rather, Anna's suit falls within the *ultra vires* exception.

Defendants respond that the *ultra vires* exception does not apply because they acted within the scope of their authority and with approval from the Court.  But that argument is ultimately irrelevant to the district court's subject-matter jurisdiction.  The scope of the *ultra vires* exception depends on only whether the bankruptcy trustee seized non-debtor property.  *Barton*, 104 U.S. at 134; *see, e.g.*, *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) ("[A] trustee wrongfully possessing property which is not an asset

of the estate may be sued for damages . . . without leave of his appointing court.").

To be sure, other courts have taken a narrow approach to the *ultra vires* exception. But they have done so on "a second rationale for the *Barton* doctrine"—"a common law interest in protecting trustees and receivers from claims that they are personally liable for their official actions." *In re DMW Marine, LLC*, 509 B.R. at 507 & n.15. And we explicitly rejected this rationale in *Chua*. We explained that although "our previous decisions discussing the *Barton* doctrine have credited this policy concern," they did so only in dicta. *Chua*, 1 F.4th at 954. To be sure, the "need to attract qualified individuals to serve as receivers and bankruptcy trustees might be a legitimate policy concern." *Id.* But "it has nothing to do with subject-matter jurisdiction." *Id.*

Still, our conclusion does not mean plaintiffs may state a claim in every case. We clarified that we do not need to enforce "[t]he policy concern" through subject-matter jurisdiction "because court-appointed receivers enjoy judicial immunity for acts taken within the scope of their authority." *Id.*

And that is the case here. As a court-appointed trustee, Kennedy enjoys "judicial immunity for acts within the scope of [his] authority." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir. 1985). That immunity applies even if a bankruptcy trustee acts in error, maliciously, or in excess of the appointing court's jurisdiction. *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Plus, it extends to his attorneys. *Chua*, 1 F.4th at 955; *cf. Goldberg*, 573 F.3d

at 1270. After all, the protection we afford trustees "would be meaningless if it could be avoided by simply suing the Trustee's attorneys." *Chua*, 1 F.4th at 955 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

Kennedy and his counsel acted within the scope of the Break Order. The Break Order authorized Kennedy to seize any items he reasonably believed to be part of the Debtor's estate. And given that the documents and assets at the Juravins' residence were voluminous, disorganized, and previously undisclosed, some accidental seizure of non-debtor property is understandable—and protected. *See Bolin*, 225 F.3d at 1239 (judicial immunity covers errors). In the bankruptcy court, Defendants explained that personal files and estate-related records were intermixed in stacks of documents. Defendants took those stacks of documents because they could not filter through all the relevant materials in a timely manner at the Juravins' residence.

The bankruptcy court credited that explanation. Upon hearing the Juravins' motion to remove Kennedy and disqualify his counsel, the bankruptcy court found that Kennedy was "[n]ot only . . . within [h]is realm" but that he was "doing exactly what the [C]ode requires him to do when a debtor fails to cooperate and voluntarily supply the information requested." And Anna pleads no fact that allows us to draw a reasonable inference against the bankruptcy court's factual findings. So Defendants acted within the scope of their official duties.

As a result, Defendants enjoy judicial immunity.  The district court's judgment is **AFFIRMED**.